WALT P. CONAWAY ET AL., PROSECUTORS, v. CITY OF ATLANTIC CITY AND PACIFIC GARAGE COMPANY, DEFENDANTS.

Submitted February 10, 1931—Decided March 13, 1931.

Before Justices PARKER, CAMPBELL and BODINE.

For the prosecutors, *Cole & Cole.*

For the defendants, *Joseph B. Perskie.*

The opinion of the court was delivered by

PARKER, J.   The question to be decided is the legality of a permit purporting to have been granted July 7th, 1930, by J. A. Paxson, acting mayor, as director of public affairs, and to permit the Pacific Garage Company "to erect two (2) story addition to present garage as per plans & spcf" (specifications) in accordance with the specifications and plans filed with the building department * * *," at 1715-1717 Pacific avenue, Atlantic City, east of Indiana avenue.

Besides the zoning legislation of 1928 (*Pamph. L., p.* 696), two local ordinances bear upon the situation.  That first in

point of time is an ordinance of May 2d, 1929; the other is the zoning ordinance of November 29th, 1929, which contains a proviso that where it "imposes a greater restriction upon the use of buildings * * * than * * * required by * * * existing provisions of law or ordinance * * * the provisions of this ordinance shall control."

The prosecutors are owners of real estate in the immediate vicinity of the garage in question. Prosecutor Conaway owns the nearest street corner in the same block, thirty or forty feet away; prosecutor Andrews, the nearest corner on the next block; prosecutor Somers, on Indiana avenue near Pacific avenue, farther away than the others, but in the same general territory. It is objected at the outset that none of them, as a mere neighbor, has any status to question the legality of the permit; but in this we cannot concur. One of the fundamental theories of a zoning ordinance is to place all owners in a zone on the same footing and avoid invidious distinctions. Hence each of such owners would seem to have a lively interest in seeing to it that the others obey the rules and that the authorities act according to the powers conferred on them and not beyond them. That interest is expressly recognized in the act of 1928, for example in requiring advertisement and public hearings preliminary to adopting any ordinance; in requiring that regulations shall be made with a view of conserving the value of property, and encouraging the most appropriate use of land (section 5); and in conferring upon the owners of lots included in any proposed change or of lands within one hundred feet to the rear or front (excluding the street) a veto power by a twenty per cent. protest, such veto to be overcome (section 8) only by a three-fourths vote of the municipal body. Such interest is further recognized by the provision in section 9 relating to appeals to the board of adjustment (page 700), that notice must be given to all property owners within two hundred feet of the property to be affected by the appeal. The very scheme of the statute connotes a neighborhood interest in the enactment and enforcement of a zoning ordinance. How

widely that interest extends need not be here decided. It is clear that Conaway has such an interest, and perhaps both of the others also. The point was directly decided by this court in *Gaston* v. *Ackerman,* 142 *Atl. Rep.* 546; 6 *N. J. Mis. R.* 696, on motion to vacate an *allocatur,* and as a preliminary to setting aside a permit illegally granted. *Gaston* v. *Ackerman,* 6 *N. J. Mis. R.* 694; 142 *Atl. Rep.* 545. See, also, *Stokes* v. *Jenkins,* 107 *N. J. Eq.* 318, and cases cited.

We proceed, then, to the merits. The ordinance of May 2d, 1929, provides that "no public garage  *  *  * shall be hereafter erected, and no material alterations or additions to any public garage  *  *  * shall be hereafter made, within the following described limits: (specifying limits including the garage in question and lands of the prosecutors) provided, however, that application for a permit to erect a public or private garage and application for a permit to make material alterations or addition to any public garage, oil station, or private garage within the limits aforesaid may be made by filing with the superintendent of buildings detailed plans and specifications therefor; whereupon the said superintendent shall present the same to the director of the department of public affairs, who shall be and is hereby vested with the power and authority to issue a permit authorizing the erection or the material alteration or addition of or to either a public or private garage within the said restricted territory." There is a further proviso requiring a finding by the director that the proposed work when completed will not be detrimental to public health or safety, or from the standpoint of fire hazard. We need not go into detail as respects this ordinance as we shall assume for present purposes without deciding, that the acting director complied with its terms in granting the permit under review. The crux of the case as we view it is whether his action was lawful in view of the later zoning ordinance, which, as noted above, expressly provides that it shall control in any case where it imposes a greater restriction on the use of buildings, &c., than required by prior regulations. Section 6 of this ordinance provides:

"In Business Zones Nos. 2 and 3, no building or premises shall be used, and no building shall be erected or altered which is arranged, intended or designed to be used for any of the following specified trades, industries or uses : * * *

"8. Garage or group of garages for more than five motor vehicles, *except as permitted by the board of adjustment.* Provided, however, that the following types of garage shall be permitted:" (specifying certain types not now relevant. The garage in question is in Zone 2).

Section 20 of this ordinance provides in part:

"In their interpretation and application the provisions of this ordinance shall be held to be the minimum requirements adopted for the promotion of the public health, safety, comfort, convenience and general welfare. * * *"

If the "two-story addition" stated in the application for the permit is within the purview of the first-quoted clause of section 6, it is clear that it cannot be constructed "except as permitted by the board of adjustment." The argument for defendants on this point is, that section 6 does not mention an "addition" though it does mention the "erection or alteration" of a building; and reference is made to the May ordinances, *supra,* in which the word "addition" is used. We think the argument is specious and unsubstantial. An addition to a building necessarily involves alteration; and as to "erection" the very application itself is to "erect an addition." The spirit of both ordinances is to restrict any increase of any non-conforming use. Holding this view, we conclude that it was unlawful to issue a permit not sanctioned by the board of adjustment pursuant to the November ordinance, and it is conceded that that board never sanctioned it and was not asked to do so.

It remains to consider the objection set up by defendants, that the statute of 1928 provides an appeal in certain cases to the board of adjustment; that the case before us is one of those cases; that before coming to this court the prosecutors should exhaust their statutory remedy and that they have not done so; and that it follows that this court should

hold its hand until such statutory remedy has proven ineffective. The same argument was made on application for the writ and for the time overruled by an *allocatur*, but it is proper to consider it once more.

The rule invoked has been often applied. *Florenzie* v. *East Orange*, 88 *N. J. L.* 438; *Lutz* v. *Kaltenbach*, 101 *Id.* 316, cited in defendants' brief. It is a rule of policy, convenience and discretion rather than of law, particularly as the prerogative powers of this court are protected by the constitution from legislative changes. Sometimes the policy is statutory, as in the school law (*Ridgway* v. *Board of Education*, 88 *N. J. L.* 530); more often it is judicial, as in *Lutz* v. *Kaltenbach, supra*. But the court has power to intervene, and in a proper case will intervene, without waiting for intermediate statutory remedies to be exhausted.

Assuming for present purposes without deciding, that the general appellate powers conferred on the board (*Pamph. L.* 1928, *pp.* 701, 702, *subsecs.* 1, 4) in terms embrace such a case as this, it would seem notwithstanding, that the case is plainly within its original jurisdiction. At all events any such question as that should be decided here and not by the board on appeal. By section 9 the governing body is authorized to empower the board in appropriate cases "to make special exceptions to the terms of the ordinance in harmony with its general purpose and intent," &c. That power, in cases like the present, was conferred by the ordinance of November, 1929. Where the board should act specially in its original jurisdiction it would be illogical for us to require it to act on appeal by refusing to deal with this case now before us. Consequently we conclude that it should be decided at this stage; and the result of what has been said above is that the permit granted by the acting mayor and acting commissioner must be set aside, with costs.