JOHN SGROMOLO, RELATOR, v. CITY OF ASBURY PARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, MAYOR AND COUNCIL OF THE CITY OF ASBURY PARK, J. OLIVER ARMSTRONG, CITY MANAGER OF THE CITY OF ASBURY PARK, AND GEORGE MARTIN, BUILDING INSPECTOR OF THE CITY OF ASBURY PARK, RESPONDENTS.

Argued March 9, 1946—Final briefs submitted March 28 and March 29, 1946—Decided April 17, 1946.

Before Justice PERSKIE, at chambers, pursuant to statute.

For the relator, *Irving E. Keith* (*Ward Kremer,* of counsel).

For the respondents, *E. Alexander Edelstein.*

PERSKIE, J. This cause is before me on the return of a rule to show cause, which I allowed (*R. S.* 2:83–4), why a peremptory writ of *mandamus* should not be granted compelling respondents to issue a permit to the relator for the construction of a building, to be used as a restaurant, at the southeast corner of Third Avenue and Kingsley Street, in the City of Asbury Park.

From the unchallenged proofs as to the layout of the streets and as to the existing uses made of the properties abutting those streets, in relation to the relator's property, we ascertain the following facts:

Kingsley Street is one block west of Ocean Avenue and runs parallel thereto. Lake Avenue is the most southerly street in the city at the beach front, and runs along the north shore of Wesley Lake, the southerly boundary of the

city. At this point are located the Casino, a merry-go-round, and other amusement devices. The first east and west bound street north of Lake Avenue is Asbury Avenue. Then in order come First, Second, Third (location of relator's land), Fourth and Fifth Avenues, a park, and then Sunset Avenue.

In the area extending from Asbury Avenue north as far as Fifth Avenue and from Ocean Avenue on the east to Kingsley Street on the west are principally amusement enterprises. In the blocks to the north and south of relator's property are, among other things, lunch stands, "hot dog" stands, small restaurants, amusement activities, &c.

In the stated conditions within the neighborhood of the relator's property (*Hann* v. *Borough of Sea Girt*, 134 *N. J. L.* 74; 46 *Atl. Rep.* (*2d*) 47), and in the absence of any then zoning ordinance in the city, the relator, on May 20th, 1944, made application for a permit to erect a commercial building size 45 feet by 75 feet (restaurant) on his lands, at the estimated cost of $4,000. He paid the required fee. The building inspector found that the building plan was in accordance with the building ordinance of the city and so certified it in writing.

On June 26th, 1944, the mayor and council of the city unanimously approved relator's application subject to its approval by the War Productions Board, which, in turn, approved same on May 22d, 1945.

In the early part of May, 1945, an election was held in the City of Asbury Park. As a result of that election, some of the personnel of the council was changed. The relator importuned the new body for his permit. He was told by the mayor, "Well, John, I am sorry but this is a different council, you will have to apply for a new application." Accordingly, on June 8th, 1945, the relator again made application for a permit, the building to be erected to be 45 feet by 30 feet and to cost $3,000 in cash, or $8,000 if all labor and materials had to be purchased. He modified the plans for the building because of the relaxation of restrictions on materials and planned "a little more elaborate front" for the building.

Still the relator did not receive his permit. Finally, on September 21st, 1945, the relator then again made application

for a building permit. Together with his architect, the relator conferred with the building inspector and the three read the building code and found "it [application for a permit] was all right." Then they conferred with the city manager and he, too, said it "was all right." They asked the city manager when the permit would be obtained and he told them "I guess it will be cleared up in a few days." Relator then waited a couple of weeks and then again asked the city manager about the permit and was advised, "Well, we are too busy with something else." Then relator called on the city manager once more and was told "everything is in order, only two things you have got to do, take the plans and have your architect check them off, something about a chimney and something else about the state requirements about a partition has to be built outside the entrance of the bathrooms for the help." The architect changed the plans to meet these requirements and the changes were fully effected by October 24th, 1945. Still the relator received no permit.

On November 7th, 1945, the city adopted a zoning ordinance. By this ordinance the relator's land was placed in Zone R-4, which restricted buildings to either a hotel, apartment house or apartment hotel.

I find no need to express any opinion as to the relator's first and second applications. Reference is made to these applications merely to indicate the attitude of the city fathers to relator's applications. Assuming, but not deciding, that the relator may be said to have abandoned these applications, I am entirely satisfied that he completely and unquestionably established his right to the permit under his third and last application, under date of September 21st, 1945.

The relator's land was, and still is, in a business area when he made his applications and paid the required fee. His proposed use of his land was definitely established on October 24th, 1945, when he satisfied every demand made by respondents. It thus beggars understanding why the permit was refused. Relator's right to the lawful use of his property, in the circumstances, may not be denied him. *Cf. Brown* v. *Terhune,* 125 *N. J. L.* 618; 18 *Atl. Rep.* (2d) 73; appeal dismissed, 127 *N. J. L.* 554; 23 *Atl. Rep.* (2d) 575. As we

have seen, the zoning ordinance has no application. For here there was a full compliance with the building code before the zoning ordinance was adopted. It was therefore the peremptory duty of the building inspector to issue the permit in question. *Conaway* v. *Atlantic City,* 107 *N. J. L.* 404; 154 *Atl. Rep.* 6; *Piaget-Del Corp.* v. *Kulik,* 133 *N. J. L.* 485; 45 *Atl. Rep.* (*2d*) 125; *Cf. Losick* v. *Binda,* 102 *N. J. L.* 157; 130 *Atl. Rep.* 537; *Lutz* v. *Kaltenbach,* 101 *N. J. L.* 316; 131 *Atl. Rep.* 899.

There is no merit to the contention stoutly urged that the failure of the relator to exhaust the remedies under the zoning ordinance is a bar to the relief which he seeks. The contrary is, in the circumstances, true. *Conaway* v. *Atlantic City, supra; Piaget-Del Corp.* v. *Kulik, supra* (at *pp.* 487, 488).

A peremptory writ of *mandamus* is awarded, with costs.