LUCY B. OLIVA, PLAINTIFF–APPELLANT, v. CITY OF
GARFIELD AND FRANK AVELLA, DEFEND-
ANTS–RESPONDENTS.

Argued November 15, 1948—Decided December 13, 1948.

*Mr. Aaron Heller* argued the cause for plaintiff-appellant (*Messrs. Heller & Laiks,* attorneys).

*Mr. John Frank, Jr.* argued the cause for defendants-respondents (*Messrs. Chandless, Weller, Kramer & Frank,* attorneys).

The opinion of the court was delivered by

ACKERSON, J.  This is an appeal from a judgment of the former Supreme Court dismissing a writ of certiorari granted to review the refusal of the building inspector of the City of Garfield to issue a permit for the erection of a gasoline filling station on a vacant lot at the northwest corner of Midland Avenue and Outwater Lane in that city.

The lot in question was acquired by the plaintiff on October 8, 1945.  It has a frontage of 109.22 feet on Midland Avenue and 75 feet on Outwater Lane.  The former thoroughfare runs north and south and the latter east and west and both accommodate considerable traffic.  A gasoline station presently occupies the northeast corner of the intersection and a gasoline station and storage garage are located on a lot approximately 100 feet square at the southeast corner.  On the southwest corner there is a baseball field, which forms part of what is a tract of unimproved land which was dedicated for park purposes in 1939, and runs in a southerly direction for approximately 1400 feet, being bounded on the east by Midland Avenue and on the west by a railroad some 500 feet away.

In the area at the northwest corner of the aforesaid highways, and directly west of and adjoining plaintiff's lot, on Outwater Lane, there is a row of four dwellings, followed by a tract of vacant unimproved land running to the railroad, a distance of approximately 500 feet.  To the north, and immediately adjoin-

ing plaintiff's lot on Midland Avenue, is a row of five dwellings, followed by a sawdust mill and an ice cream plant, approximately 500 feet and 800 feet, respectively, from the intersection.

When the municipality was originally zoned in 1928, the entire westerly side of Midland Avenue, both north of Outwater Lane (including plaintiff's lot) and south of Outwater Lane (including the park), was zoned for industrial usage. The easterly side of Midland Avenue, south from Outwater Lane, an area of at least five blocks, was zoned as a Class "A" residence zone, with the exception of the corner lot which was zoned for business due to a then existing business use—this being the tract on which the gasoline station and storage garage are now located. The land north of Outwater Lane on the east side of Midland Avenue is situated in the Township of Saddle River and was and is zoned for a business use.

By an amendatory ordinance adopted by the City of Garfield in 1939, the westerly side of Midland Avenue from Outwater Lane south for a distance of 2000 feet (including the aforesaid park) was rezoned from an industrial to a Class "A" residence zone. The northerly side of Outwater Lane from the aforesaid railroad easterly to Midland Avenue (approximately 500 feet), and thence northerly along the latter avenue for 179.22 feet (including plaintiff's vacant lot and two of the houses next adjoining) was rezoned from industrial to a Class "B" residence zone, the balance of Midland Avenue to the north (including the remaining three dwellings, sawdust mill and ice cream plant) remained unchanged and in an industrial zone.

Gasoline filling stations are not permitted in Class "B" residential zones and the building inspector's denial of plaintiff's application was for that reason. At this time (February 4, 1948) the local board of adjustment, created by the zoning ordinance, had but two of its full complement of five members, the terms of three having expired in 1945. There were no appointments to fill the vacancies, and, although plaintiff requested action, the vacancies were not filled until February 18, 1948—two days after the allowance of the present writ.

Under the Zoning Act (*R. S.* 40:55–1 *et seq.*) a building inspector, or similar administrative official, has no authority to grant exceptions to or variances from the literal enforcement of a zoning ordinance. In applying for the present writ and throughout the proceedings thereon the plaintiff has apparently acted upon two theories: (1) that because the board of adjustment lacked a quorum to hear her appeal and grant a variance, she could apply directly to the former Supreme Court for such a variance; (2) that the amendatory ordinance, in so far as it changes the area in which plaintiff's lot is located from an industrial to a residential zone, is an unreasonable and arbitrary exercise of the zoning power, and, therefore, unconstitutional.

The court below, apparently acting on the first theory above stated, considered the evidence and dismissed the writ on the ground that plaintiff had failed to prove that a literal enforcement of the ordinance would result in the "unnecessary hardship" required "to sustain the prosecutor's application for a variance or exception to the zoning ordinance". The court, however, does not appear to have passed on the validity of the amendatory ordinance.

In reaching the conclusion that plaintiff was not entitled to a variance, the court was exercising, as a matter of original jurisdiction, a function committed by the Zoning Act to the sound discretion and experienced judgment of the board of adjustment, controlled by law and reason, and supervised under stated conditions by the governing body of the municipality *(R. S.* 40:55–39 *(c) and (d) )*, and we think that this was a function which the court could not properly assume.

Our courts have stated the controlling principle as follows: "The statute commits the exercise of this discretionary authority to make special exceptions to the experienced judgment of the board of adjustment, supervised by the governing body; and it is not within the province of [the] court *(R. S.* 1937, 2:81–8 notwithstanding) to substitute its judgment for that of the local bodies, unless there has been an abuse of the delegated legal discretion" in reaching a determination. *Brandon v. Montclair*, 124 *N. J. L.* 135 *at page* 145 *(Sup. Ct.* 1940*)*,

aff'd 125 *Id.* 367 *(E. & A.* 1940); *Potts v. Board, etc., of Princeton,* 133 *Id.* 230, *at page* 238 *(Sup. Ct.* 1945).

The cases relied upon by the court below as its authority for exercising this discretionary function of the municipal bodies, *Conway v. Atlantic City,* 107 *N. J. L.* 404 *(Sup. Ct.* 1931) and *Lane v. Bigelow,* 135 *Id.* 195, 200 *(E. & A.* 1947), are not in point. They merely reaffirm the prerogative powers of the former Supreme Court to review directly, by appropriate writ, the legal or equitable character of the inspector's act in allowing or rejecting an application for a building permit, and to pass upon the constitutionality of a zoning ordinance. They do not involve, as here, the assumption by the court of the discretionary power vested by statute in municipal bodies to grant or refuse variances from restrictive ordinances. *Cf. Losick v. Binda,* 102 *N. J. L.* 157 *(E. & A.* 1925); *Lutz v. Kaltenbach, Ibid,* 718 *(E. & A.* 1926); *Leonard Investment Co. v. Trenton,* 122 *Id.* 308, 312 *(Sup. Ct.* 1939).

▉▉ In the case *sub judice* the plaintiff was not without the means of adequate relief. On proper application the court could have awarded the appropriate writ to compel the appointment of the necessary members to permit the board of adjustment to function. As a matter of fact, the membership of the board was completed two days after the present writ was allowed, and this fact appeared in the evidence before the court, and the court could have dismissed the writ without prejudice to plaintiff's right to apply to the newly organized board for the desired relief.

▉ Furthermore *R. S.* 40:55–44 provides that the board of adjustment shall fix a reasonable time for the hearing of appeals and that notice thereof shall be given to the landowners within 200 feet of the property to be affected by the appeal. This requirement is jurisdictional, *Cf. Hendey v. Ackerman,* 103 *N. J. L.* 305, 308 *(Sup. Ct.* 1926). Therefore, even if the court could have properly assumed the functions of the board of adjustment, such landowners were not made parties to the proceedings, nor does it appear that they were notified thereof, and, therefore, they were not afforded an opportunity to be heard as required by the statute.

We conclude, therefore, that the court below should not have undertaken to consider plaintiff's application for a variance, and should not have based its dismissal of the writ upon the adverse determination of that question.

However, as already noted, the question of the constitutionality of the amendatory ordinance, in so far as it affects the desired use of plaintiff's property, was properly brought up by the present writ, *Losick v. Binda, supra; Lutz v. Kaltenbach, supra; Leonard Investment Co. v. Trenton, supra.*

The validity of an ordinance from a constitutional standpoint depends upon whether its provisions constitute a proper exercise of power within the purview of the governing statute or whether they constitute an arbitrary, unreasonable, and capricious exercise of such power. *Phillips v. Township Council, etc., Teaneck,* 120 *N. J. L.* 45 *(Sup. Ct.* 1938), aff'd 122 *Id.* 485 *(E. & A.* 1939).

Zoning regulations must be in accordance with a comprehensive plan to achieve specified purposes generally relating to the health, safety, morals or general welfare of the community and with reasonable consideration to the character of each district, its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout the community. *R. S.* 40:55–32. In exercising this power the municipality may be divided into districts of such number, shape and area as may be best suited to carry out the zoning purposes. *R. S.* 40:55–31.

We believe that the regulation before us fully satisfies the foregoing requirements. It involved a reclassification of several large areas in the vicinity of plaintiff's lot from industrial to residential zones. It appears that there are four residences immediately to the west of plaintiff's lot on Outwater Lane and five dwellings immediately to the north on Midland Avenue. With the exception of the two gasoline stations on opposite corners across the street from plaintiff's lot and a storage garage adjoining one of them, there is no business or industry within at least 500 feet of this lot. The Class "B" residential area in which plaintiff's property is located, is not an isolated tract surrounded by industry. It is adjacent to

the extensive park lands and the large Class "A" residential zones to the south and southeast and forms an effective buffer between them and the industrial area to the north. This is proper zoning practice. *Crow v. Westfield,* 136 *N. J. L.* 363 *(Sup. Ct.* 1948). "Of necessity there are border areas where the reason for restrictions are not so apparent because it is inevitable that zones of varying degrees of restriction must abut and that restricted lands in proximity to unrestricted [or less restricted] lands will be in a somewhat prejudiced position. But that is a consequence upon the exercise of the constitutional authority." *Vogel v. Board of Adjustment, Twp. Bridgewater,* 121 *N. J. L.* 236, 238 *(Sup. Ct.* 1938); *Coriell v. Dunellen,* 122 *Id.* 172 *(Sup. Ct.* 1939), aff'd 123 *Id.* 264 *(E. & A.* 1939). Moreover there is ample evidence that the plaintiff's lot may be beneficially used for residential purposes.

■■ One attacking a zoning ordinance as unreasonable in its application is met with the presumption that it is reasonable and must bear the burden of establishing the contrary. *Repp v. Shahadi,* 132 *N. J. L.* 24 *(Sup. Ct.* 1944); *Yoemans v. Hillsborough Tp.,* 135 *Id.* 599 *(Sup. Ct.* 1947); *Crow v. Town of Westfield, supra.* We find from the record before us that the plaintiff has not met this burden, and that the amendatory ordinance does not violate the constitutional guaranties upon which she relies.

While, as already observed, the judgment below dismissing plaintiff's writ is rested upon a wrong basis, nevertheless, the dismissal should be sustained for the reasons hereinbefore expressed. The judgment will then rest upon the grounds that the court below was without jurisdiction to entertain the application for a variance from the amendatory ordinance, and that the latter is not violative of plaintiff's constitutional rights. Such dismissal is without prejudice to a proper application to the local board of adjustment for the desired variance. The judgment is affirmed.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING, and ACKERSON—7.

*For reversal:* None.