[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 497 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 498 
Plaintiff prosecutes this civil action to determine the legal status of an ordinance of the Borough of River Edge, adopted May 2, 1949, entitled "An Ordinance Regulating the Subsequent Location of Buildings and Other Structures on the North Side of Main Street Between Bogert Road and Kinderkamack Road in the Borough of River Edge, Bergen County, New Jersey." The ordinance establishes a building set-back line 67 feet from the northerly side-line of Main Street; 30 feet from the easterly side-line of Bogert Road; and 30 feet from the westerly side-line of Kinderkamack Road. The ordinance prohibits the erection of any building, or other structure, between the set-back lines, as established by the ordinance, and the street lines. The northerly side of Main Street, between Bogert Road and Kinderkamack Road, is one long block — approximately 1,000 feet. It is zoned for business to a depth of 200 feet. The set-back restrictions in the aforesaid ordinance affect only land in that one business block.
Main Street is 50 feet wide. Its southerly side, between Bogert Road and Kinderkamack Road, is two blocks long. This side of the street lies in a single-family residence zone, except the westerly end, which lies in a business zone, where it fronts on State Highway Route No. 4.
The legitimate, or authentic, zoning ordinance of the Borough of River Edge requires all buildings, in a residence zone, to set back 30 feet from the abutting street line. In a *Page 499 
business zone, the zoning ordinance requires all buildings to set back 25 feet from the abutting street line. The zoning ordinance was adopted August 9, 1943, pursuant to the provisions of Article 3, Chapter 55, of Title 40 of the Revised Statutes. (This is the Article of the Revised Statutes which authorizes municipalities to adopt zoning ordinances.)
Section 2, of the ordinance here under review, expressly states that it was passed pursuant to Article 3, Chapter 55, of Title 40 of the Revised Statutes. However, it was not adopted pursuant to Section 40:55-35, which is the section of said Article 3 that authorizes amendments to zoning ordinances.
Only two buildings are located on the northerly side of Main Street between Bogert Road and Kinderkamack Road. The building nearer Bogert Road, extending approximately 890 feet along Main Street, is known as the Huffman-Boyle building. It is occupied by a large store where home furnishings and appliances are sold, and by a variety of small stores: a shoe store, bakery, candy shop, drug store, delicatessen, and several other stores. The other building, which is nearer Kinderkamack Road, is a large A P super-market. These two buildings stand about 120 feet apart, and they set back 67 feet, or more, from the northerly side of Main Street. The vacant space between the two buildings and the unoccupied frontage between the buildings and the northerly side of Main Street is paved and reserved for parking automobiles. There are several single-family dwellings on the southerly side of Main Street, which set back about 30 feet from the street-line.
Bogert Road and Main Street intersect on the northeasterly side of State Highway Route No. 4. Bogert Road ends there, but Main Street continues, on the opposite side of Route No. 4, into Hackensack. As a general rule, the traffic on all three thoroughfares entering this intersection is heavy, and there are, of course, several lanes of converging traffic at these crossroads, resulting in a risky criss-crossing of traffic. A captain in the police department of River Edge testified that, in his opinion, a building, if erected at the corner of Bogert *Page 500 
Road and Main Street, would seriously interfere with the view of motorists on Main Street, who are on the lookout for traffic emerging from Bogert Road onto Route No. 4, and that such a building would also obstruct the view of motorists on Bogert Road watching for traffic coming out of Main Street onto Route No. 4.
The northerly side of Main Street and the easterly side of Bogert Road form an acute angle, where they meet, of 66 degrees, 41 minutes, and 30 seconds. The crotch, formed by their intersection, however, is rounded, so that traffic from Main Street can more readily turn and enter Bogert Road — or viceversa. The irregular lot, or plot of land, located in the nook, at the juncture of these two streets, is owned by the plaintiff. The lot is approximately 55 feet long on Bogert Road, and has an average width of 22 feet. The whole lot lies between the street lines and the building set-back lines established by the ordinance here under review.
The Constitution of New Jersey significantly recognizes and affirms the natural and unalienable rights of liberty, and the right to possess and protect property (Art. 1, par. 1, N.J.Const.). Among those prerogative rights of a property owner is that of using his property for his own advantage and enjoyment, and such a right is a liberty as well as a property right (People ex rel. Schimpff v. Norvell, 13 N.E.2d 960,368 Ill. 325). Hence, a zoning regulation which limits or restricts an owner of property in his freedom of use deprives such owner, without compensation, to the extent of such restriction, of his liberty and also of a property right (Vassallo v. Orange,125 N.J.L. 419).
The "police power" is the succinct phrase used to express the sovereign right of a state to promote, within constitutional limits, good order, safety, health, morals, and the general welfare of society (Barbier v. Connolly, 113 U.S. 27,5 S.Ct. 357, 28 L.Ed. 923; 16 C.J.S. 537, § 174). The Constitution of New Jersey expressly includes, as a part of the police power of the State, the right of the legislature to enact laws under which municipalities may adopt zoning ordinances (Art. IV, sec. VI, par. 2, N.J. Const.). In the *Page 501 
case of 420 Broad Avenue Corporation v. Palisades Park,137 N.J.L. 527, the court said that the authority of a municipality to limit or restrict the use of private property by zoning ordinances arises from the police power inherent in Government, the constitution, and the statutes passed pursuant thereto.
The Constitution of New Jersey also provides that private property shall not be taken for public use without just compensation (Art. 1, par. 20, N.J. Const.).
It is the solemn duty of the court to guard and protect zealously the liberty of the people and their property rights, and it is, likewise, the duty of the court to prevent the taking of private property for public use without just compensation. But, it is also the duty of the court to uphold and enforce all reasonable laws properly relating to the police power for the promotion of good order, public safety, health, morals, and the general welfare. These duties often require the court to exercise great care in making a distinction between a violation of a constitutional or common law right, on the one hand, and an incidental injury to private property resulting from the proper exercise of the police power, on the other. These two fundamental principals frequently clash head-on, and each strives stubbornly for precedence. In the case of Mugler v. Kansas,123 U.S. 623, 31 L.Ed. 205, the United States Supreme Court said that the legislature should determine, primarily, what measures are appropriate or needful for the protection of the public morals, public health or the public safety, and to promote the general welfare. But, Mr. Justice Harlan, speaking for the court said:
"It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exertion of the police powers of the State. There are, of necessity, limits beyond which Legislation cannot rightfully go. While every possible presumption is to be indulged in favor of the validity of a statute, * * * the courts must obey the Constitution rather than the lawmaking department of government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. * * * The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty — *Page 502 
indeed, are under a solemn duty — to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."
Consequently, zoning ordinances should be closely examined to see that they comply with every essential legal condition necessary for their validity.
The statute sanctioning the adoption of zoning ordinances by municipalities specifies several particular legal requirements which such ordinances, and the amendments thereto, must meet and satisfy before becoming legally sufficient and effective. Municipal authority to pass zoning ordinances is confined to that given by the statute. In the case of Potts v. Board ofAdjustment of Princeton, 133 N.J.L. 230, 236, the court said that, "the local exercise of the zoning power is not absolute and unlimited; it is conditioned by the statutory considerations to be served by zoning." Other cases which express the same legal rule are 179 Duncan Avenue Corporation v. Jersey City,122 N.J.L. 292; Cassinari v. City of Union City, 1 N.J. Super. 219; and Oliva v. City of Garfield, 1 N.J. 184.
The statute authorizing the enactment of zoning ordinances provides that a municipality may, by ordinance, "limit and restrict to specified districts and may regulate therein, buildings and structures according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land," and such authority shall include the right to regulate the sizes of yards, courts, and other open spaces (R.S. 40:55-30). For the purposes aforesaid, the municipality may be divided into districts, but the regulations throughout each district must be uniform (R.S. 40:55-31). However, zoning regulations, limitations and restrictions, must be in accordance with a comprehensive plan (R.S. 40:55-32). Such ordinances may be amended, but no amendment shall become effective unless approved by the planning *Page 503 
board or passed by a vote of two-thirds of the governing body. If the proposed amendment is opposed by a sufficient number of property owners, it shall not become effective unless passed by a vote of two-thirds of the governing body (R.S. 40:55-35).
The ordinance here under review is not an amendment of the Borough's zoning ordinance. It does not purport to be an amendment, and it was not adopted as such. It was not adopted pursuant to section 40:55-35 of the Revised Statutes. Where a municipality has adopted a zoning ordinance, and thereafter desires to amend it, the method prescribed by the statute for amending zoning ordinances must be followed. Hence, the ordinance in question is without legal effect as an amendment to the zoning ordinance of the Borough of River Edge.
The real, or genuine, zoning ordinance divides the Borough of River Edge into four classes of districts: Zone "A" Residence Districts; Zone "B" Residence Districts; Zone "C" Business Districts; and Zone "D" Light Industrial Districts. The said zoning ordinance requires buildings, in business districts, to set back 25 feet from the abutting street line. The restrictions imposed by the ordinance here under review affect only the business district in the one block on the northerly side of Main Street between Bogert Road and Kinderkamack Road, where it establishes a set-back line of 67 feet from Main Street, 30 feet from Bogert Road, and 30 feet from Kinderkamack Road. The ordinance in question, as a zoning restriction, violates the statutory requirement that all zoning regulations shall be uniform in each zoning district (R.S. 40:55-31). In the case ofPotts v. Board of Adjustment of Princeton, supra, the court said that "Equality and uniformity of operation within the particular zone, * * * are basic in the statute. Invidious distinctions and discriminations are inadmissible." (To the same effect see 62 C.J.S. 436, § 226 (6) E).
Zoning is the regulation by districts of building development and uses of property in accordance with some well-considered comprehensive plan, which covers the entire *Page 504 
municipality or a large part thereof. The statute (R.S.
40:55-32) requires zoning ordinances to be in accordance with a comprehensive plan, that is, a plan which is broad in its scope. In the case of Appley v. Bernards Township, 128 N.J.L. 195,198, the court said that, "It is requisite that the zoning regulations be `in accordance with a comprehensive plan,' * * *." The case of Oliva v. City of Garfield, supra, held likewise. Therefore, an ordinance which restricts the use of property only in one single block of the municipality is not, per se, a zoning ordinance (State ex rel. Spiros v. Payne,131 Conn. 647, 41 A.2d 908; 62 C.J.S. 434, § 226 (6) C). A zoning ordinance which was not formulated upon a comprehensive plan would be an unreasonable exercise of the police power, and, therefore, unconstitutional.
Hence, for the reasons stated above, the ordinance here under review is neither a zoning ordinance, nor is it an amendment to a zoning ordinance.
Article 2, chapter 55, Title 40 of the Revised Statutes authorizes municipalities to establish, by ordinance, building set-back lines on any street or part thereof. Once a building set-back line is established by ordinance, no new building, structure, or part thereof, may be erected between the set-back line and the street line (R.S. 40:55-23). The validity of the ordinance here under review is not challenged as a valid exercise of the authority conferred upon municipalities by that statute (R.S. 40:55-22 et seq.). Since that question is not now before the court, this decision passes by that question, leaving it undecided. The complaint, filed in this case, alleges that the ordinance here under review was duly adopted by the governing body of the Borough of River Edge. The answer of the Borough admits that allegation. It will, therefore, be presumed that the ordinance is valid and reasonable, and that it was adopted pursuant to the authority conferred by Article 2, Chapter 55, Title 40 of the Revised Statutes (American Grocery Co. v. Boardof Com'rs of New Brunswick, 124 N.J.L. 293; 62 C.J.S. 861, § 446 C).
Since the ordinance here under review does not fall within the powers granted to municipalities by Article 3, *Page 505 
Chapter 55, Title 40 of the Revised Statutes, section 2 of the said ordinance is void and of no effect. But, since the rest of the ordinance, except section 2, may be enacted pursuant to Article 2, Chapter 55, Title 40 of the Revised Statutes, only section 2 of the ordinance will be set aside. The mere fact that a part of an ordinance is invalid furnishes no reason for setting aside the ordinance in toto, where the invalid part is clearly separable from the rest of the ordinance (Prinz v. Paramus,120 N.J.L. 72, affirmed, 121 N.J.L. 585).
A judgment will be entered setting aside, as null and void, section 2 of the ordinance here under review; which section provides that, "This ordinance is passed pursuant to the authority of Article 3, Chapter 55 of Title 40 of the Revised Statutes, as amended," but without costs to either party.
The court will entertain a motion to incorporate in the judgment an order directing the defendant Borough of River Edge to comply with section 40:55-27 of the Revised Statutes.