**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 8, 2021

Geoffrey G. Grivner, Esquire
Buchanan, Ingersoll & Rooney P.C.
919 North Market Street, Suite 1500
Wilmington, DE 19801

Tara L. Lattomus, Esquire
Eckert Seamans Cherin & Mellott, LLC
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801

RE: *Crown Castle Fiber LLC v. City of Wilmington*,
Civil Action No. 2019-0656-MTZ

Dear Counsel,

This case stems from a wireless telecommunications company's years-long endeavor to install wireless network equipment in the City of Wilmington. The city has countered the company's efforts, requiring, among other things, that the company enter into a license agreement with the city as a precondition to moving forward with its proposal. The parties' dispute is fueled by their competing views of the city's wireless regulations and their interplay with federal telecommunications law. In this action, the company seeks several declaratory judgments confirming its view of the applicable law, and two corresponding injunctions. But as I will explain, these injunctions are unavailable to the company because it has adequate remedies at law.

The Court of Chancery is proudly a court of limited subject matter jurisdiction. The Court defends that boundary and has a duty to examine issues of subject matter jurisdiction *sua sponte*. In view of this mandate, I begin and end with a question the parties did not raise: whether this Court has subject matter jurisdiction to hear the plaintiff's claims. I conclude that it does not. For the reasons that follow, the case is dismissed, and the company may transfer the matter to Superior Court under 10 *Del. C.* § 1902 within sixty days. If the company elects to transfer, the remaining issues presented by the fully briefed motion for summary judgment should be transferred as well, so a court of competent jurisdiction can pass on their merits.

## I.     BACKGROUND[1]

Plaintiff Crown Castle Fiber LLC ("Crown Castle") operates and installs wireless telecommunications equipment. Its customers, major wireless service

---

[1] Because I conclude that the Court lacks subject matter jurisdiction over this dispute, I limit my discussion of the facts to only those necessary to resolve that issue. Though this dispute was presented on summary judgment, I evaluate subject matter jurisdiction, as I must, from the face of the amended complaint, available at Docket Item ("D.I.") 11 [hereinafter "Am. Compl."]. *See Wilm. Fraternal Order of Police Lodge #1 v. Bostrom*, 1999 WL 39546, at *4 (Del. Ch. Jan. 22, 1999) ("Subject matter jurisdiction is determined from the face of the complaint as of the time it was filed, with all material factual allegations assumed to be true." (citing *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 590 (Del. 1970), and *W. Airlines, Inc. v. Allegheny Airlines, Inc.*, 313 A.2d 145, 149 (Del. Ch. 1973)).

retailers, use Crown Castle's infrastructure to densify their networks and provide service to consumers. Starting in 2016, Crown Castle began a project to expand its infrastructure in the City of Wilmington (the "City"). Crown Castle seeks to install thirty-three sets of wireless antennas and associated equipment ("Nodes") onto new and existing utility poles. It also seeks to install attendant underground ground rings ("Grounding Rings") for each Node under the utility poles for safety.

Crown Castle has sought various approvals from the City. The City has withheld approval on many issues, including building permits for the Grounding Rings (the "Building Permits"). The City has required that Crown Castle enter into a license agreement in connection with the project, which the City contends is supported by local ordinances (the "City Wireless Regulations"). Crown Castle contends the City's fees and conditions on installation are excessive. Crown Castle's approach has three prongs, distilled into three declaratory judgments and two injunctions.

First, Crown Castle contends the City is improperly intruding on the jurisdiction of the Delaware Department of Transportation ("DelDOT") by requiring and withholding building permits for Crown Castle to complete installations allegedly on DelDOT rights of way. Crown Castle seeks a declaratory judgment that no additional approvals or permits are required to complete those installations

pursuant to the "Advanced Wireless Infrastructure Investment Act," 17 *Del. C.* §§ 1601 *et seq.*[2] Crown Castle also seeks an injunction: "To the extent City permits may be required because purportedly City-maintained sidewalks in the DelDOT rights-of-way must be removed and replaced, Crown Castle is further entitled to a permanent injunction requiring the City to immediately issue the Building Permits" for completing installations on DelDOT rights-of-way (the "Building Permit Injunction").[3] The parties agree that issuing the Building Permits is a routine, ministerial task; counsel for Crown Castle repeatedly referred to them as "$20, over-the-counter permits."[4]

Second, Crown Castle contends the City's handling of its requests, negotiation tactics, and regulations as enacted and applied violate and are preempted by

---

[2] Am. Compl. ¶ 125(A)–(F) ("As a result of the City's action and inaction, Crown Castle is entitled to a declaration that: (A) DelDOT approval of the Small Wireless Permits under the State Wireless Act is the only approval required for installation of the DelDOT Nodes, including the work necessary to install the Grounding Rings; (B) the DelDOT Nodes are not subject to the City Wireless Regulations; (C) Crown Castle is permitted to immediately proceed with all work necessary to install the Grounding Rings for the DelDOT Nodes and bring the DelDOT Nodes online; (D) no license or other similar agreement is required for Crown Castle to install Nodes in the DelDOT rights of way where DelDOT has issued Small Wireless Permits for such facilities under the Wireless Act; (E) Crown Castle has obtained all necessary authorizations to occupy the DelDOT rights of way under Section 42-706(a) of the City Code; and (F) a Grounding Ring is not a 'wireless telecommunications facility' under WTC Code § 42-704(gg).").

[3] *Id.* ¶ 126.

[4] *See, e.g.*, D.I. 32 6:13, 17:22, 20:11 [hereinafter "Hr'g Tr."].

47 U.S.C. § 253(a), which allegedly "prohibits local entities from erecting barriers that may prohibit or may have the effect of prohibiting the ability of any entity to provide telecommunications services, including taking actions or inactions that result in an unreasonable delay in the deployment of the provider's facilities and provision of telecommunications services."[5]  Crown Castle seeks a declaration that, among other things, the City Wireless Regulations are invalid; the City may not require license agreements for facilities not located on City property; and the City may not require Crown Castle to obtain any further permits or approvals beyond those required in the City code.[6]  It also seeks an injunction:  "To the extent an agreement may be required for the City Nodes, Crown Castle is further entitled to a

---

[5] Am. Compl. ¶¶ 18, 129.

[6] *Id.* ¶ 138(A)–(F) ("As a result of the City's actions and inaction, Crown Castle is entitled to a declaration that: (A) the City's actions and inactions in refusing to permit Crown Castle's proposed telecommunications network in the public rights of way in the City effectively prohibit Crown Castle from providing telecommunications service and are in violation of and preempted by 47 U.S.C. § 253(a); (B) the breadth and vagueness of the City Wireless Regulations renders the same invalid; (C) the City may not impose a franchise or license agreement for facilities that are not located on City-owned facilities; (D) Crown Castle's certificate of public convenience is an authorization within the meaning of City Code § 42-706(a) that permits Crown Castle's facilities in the City's rights of way; (E) Declare that the City may not require Crown Castle to obtain City Wireless Permits or any other permits or approvals beyond building and encroachment permits required for other utilities under the City Code; and (F) Award Crown Castle's attorneys' fees and costs incurred as a result of this action, as such may be allowed by contract, law or statute.").

permanent injunction requiring the City to negotiate terms in good faith" (the "Good Faith Injunction").[7]

Finally, Crown Castle contends the fees the City seeks exceed what is permitted under 47 U.S.C. § 253(a). Crown Castle seeks a declaration as to what fees the City may impose, but no injunctive relief.[8]

After the City answered the operative complaint and the parties conducted some discovery, Crown Castle moved for summary judgment on all its claims (the "Motion"). The Motion is the Court's first formal opportunity to weigh in on the Amended Complaint's merits and whether it properly invokes the Court's subject matter jurisdiction. The parties briefed the Motion and I heard oral argument on April 14, 2021.

## II.    ANALYSIS

"The Court of Chancery is proudly a court of limited jurisdiction."[9] "Equitable jurisdiction is a predicate issue for every matter in this court of limited

---

[7] *Id.* ¶ 139.

[8] *Id.* ¶ 146 (A)–(E).

[9] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019); *see also Pike Creek Recreational Servs., LLC v. New Castle Cty.*, 238 A.3d 208, 212 (Del. Super. Ct. 2020) ("Delaware proudly guards the historic and important distinction between legal and equitable jurisdiction." (internal quotation marks omitted) (quoting *Weston Invs., Inc. v. Domtar Indus., Inc.*, 2002 WL 31011141, at *1 (Del. Super. Ct. Sept. 4, 2002))).

jurisdiction."[10]  The Court has a duty to determine whether it has subject matter

jurisdiction over a plaintiff's claims and can raise the issue *sua sponte*.[11]  "The Court

of Chancery can exercise subject matter jurisdiction only when a case falls into one

of three buckets."[12]  Those buckets contain cases in which (i) "a plaintiff states an

equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate

remedy at law," and (iii) "jurisdiction exists by statute."[13]  Crown Castle seeks to

invoke this Court's limited jurisdiction through the second bucket, requesting

---

[10] *Preston Hollow Cap., LLC v. Nuveen, LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) (citing *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376 (Del. Ch. July 31, 2019)).

[11] *See*, *e.g.*, Ct. Ch. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."); *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009) ("The issue of subject matter jurisdiction is so crucial that it may be raised at any time before final judgment and by the court *sua sponte*."), *aff'd*, 2013 WL 1283533 (Del. Mar. 28, 2013) (TABLE); *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 77 n.5 (Del. Ch. 1991) ("[U]nlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties.").

[12] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018); *see also Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (identifying the three ways the "Court of Chancery can acquire subject matter jurisdiction").

[13] Delawareans for Educ. Opportunity, 2018 WL 4849935, at *5.

equitable relief in the form of the Building Permit Injunction and the Good Faith Injunction.[14]

Equitable relief is unavailable, and so cannot anchor subject matter jurisdiction, where a "sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[15] "The question is whether the remedy available at law will afford the plaintiff[s] full, fair[,] and complete relief."[16] In evaluating whether an adequate remedy at law exists, the Court looks beyond the relief stated in the complaint and focuses instead on "what relief is actually sought."[17] In other words, "[t]his jurisdictional inquiry is a serious one involving a

---

[14] Am. Compl. ¶¶ 124–125. Crown Castle's requests for declaratory judgment cannot themselves confer subject matter jurisdiction. *Heathergreen Commons Condo. Ass'n v. Paul*, 503 A.2d 636, 642 (Del. Ch. 1985) ("[T]he Court of Chancery has jurisdiction over a declaratory judgment action only if there exists an underlying basis for equity jurisdiction measured by traditional standards.").

[15] 10 *Del. C.* § 342.

[16] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5 (quoting *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 315 A.2d 577, 579 (Del. 1974)); *see also J.W. Childs Equity P'rs, L.P. v. Paragon Steakhouse Rests., Inc.*, 1998 WL 812405, at *4 (Del. Ch. Nov. 6, 1998) ("I will not repeat myself here, except to state that where a remedy provided by a law court of the state would be sufficient, that is, complete, practical and efficient, this Court is without jurisdiction." (internal quotation marks omitted) (quoting *Int'l Bus. Machs.*, 602 A.2d at 78, and citing *In re Wife K.,* 297 A.2d 424 (Del. Ch. 1972)).

[17] *See Rapposelli v. Elder*, 1977 WL 23821, at *1 (Del. Ch. Nov. 8, 1977); *see also Levinson v. Cont'l Ins. Servs., Inc.*, 1991 WL 50145, at *2 (Del. Ch. Apr. 4, 1991) ("This Court must make a realistic assessment of the nature of an alleged wrong and the relief available to determine if equity jurisdiction exists." (citing *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 297 A.2d 428 (Del. Ch. 1972), *rev'd on other grounds*, 315 A.2d 577 (Del. 1974))); *Gladney v. City of Wilm.*, 2011 WL 6016048, at *4 (Del. Ch. Nov. 30, 2011) ("It

close examination of the plaintiff's claims and desired relief, not a perfunctory verification of the plaintiff's 'incantation of magic words' sounding in equity."[18] As Chancellor Allen put it:

> Neither the artful use nor the wholesale invocation of familiar chancery terms in a complaint will itself excuse the court . . . from a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate. If a realistic evaluation leads to the conclusion that an adequate legal remedy is available this court, in conformity with the command of [10 *Del. C.* § 342] will not accept jurisdiction over the matter.[19]

If, after such a practical assessment of the plaintiff's claims, it appears that an adequate remedy at law exists, equitable relief is unavailable. That is the outcome here.

---

is the practice of this Court in determining its jurisdiction, to go behind the facade of prayers to determine the true reason for which the plaintiff has brought suit." (alterations and internal quotation marks omitted) (quoting *Int'l Bus. Machs.*, 602 A.2d at 78)).

[18] *Savage v. Savage*, 920 A.2d 403, 408 (Del. Ch. 2006) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)); *see Christiana Town Ctr., LLC v. New Castle Ctr.*, 2003 WL 21314499, at *3 (Del. Ch. June 6, 2003) ("In this regard, the Court of Chancery will not exercise subject matter jurisdiction where a complete remedy otherwise exists but where plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery." (internal quotation marks omitted) (quoting *Int'l Bus. Machs.*, 602 A.2d at 78)), *aff'd*, 841 A.2d 307 (TABLE) (Del. 2004).

[19] *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987).

### A.    The Building Permit Injunction

In the Building Permit Injunction, Crown Castle asks for an injunction to compel the City to follow the law as stated in its requested declaratory judgment, and for a writ of mandamus to issue a routine, nondiscretionary building permit. The former is not available against a government agency, and the latter is only available in Superior Court.

"An injunction against future wrongdoing is not generally available. For forward-looking relief to be warranted, the plaintiff must establish a reasonable apprehension of a future wrong."[20] Prospective injunctive relief is generally unavailable where the plaintiff's proposed injunction merely seeks to prospectively compel a government to conform with the interpretation of the law reflected in the proposed declaratory judgment.

---

[20] *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 114–15 (Del. Ch. 2017) (footnotes and internal quotation marks omitted) (quoting *McMahon*, 532 A.2d at 606); *see also Preston Hollow*, 2019 WL 3801471, at *6.

> [T]o the extent the requested injunction merely would require the City to follow the law in the manner urged in [plaintiff's] declaratory judgment claim, such preemptive relief is unwarranted. The Courts of this State understandably *presume* that governmental agencies and actors will follow the law. . . . It would be anathema to our form of government to believe, as a baseline principle, that after a court renders a declaratory judgment another governmental agency would not follow that decision. It may actually be the case that a particular agency does not follow such a judgment, but a party should only seek injunctive relief if that agency *actually* refuses to comply with the judicial declaration.[21]

In other words, the Court cannot assume noncompliance by a government agency as the basis for a reasonable apprehension of a future wrong.

Crown Castle admits that the Building Permit Injunction amounts to an injunction ordering compliance with the law.[22] The City allegedly denied Crown Castle's application for the Building Permits because of Crown Castle's failure to enter into a license agreement.[23] The City contends the law allows conditioning the permits on such an agreement. Crown Castle argues that it does not, and seeks a declaratory judgment to that effect. Resolution of that legal claim will determine the validity of the parties' positions and will resolve Crown Castle's entitlement to the

---

[21] *Gladney*, 2011 WL 6016048, at *4 (quoting *Christiana Town Ctr.*, 2003 WL 21314499, at *4 n.19; *accord Del. Bldg. & Constr. Trades Council v. Univ. of Del.*, 2014 WL 2218730, at *2–3 (Del. Ch. May 29, 2014).

[22] D.I. 19 at 16.

[23] *See* Am. Compl. ¶¶ 72–73.

Building Permits. At this stage, Crown Castle has not pled any reasonable apprehension of future harm that would make the declaratory judgment an inadequate or incomplete remedy.

The City argues Crown Castle's request for the Building Permit Injunction sounds in mandamus, which affords Crown Castle an adequate remedy at law.

> In basic terms, a *mandamus* is a writ issued by a court to compel performance of a particular act by a lower court or a governmental officer or body. A *mandamus* is an exceptional remedy that is not available as a matter of right, and it may be directed only at certain entities or individuals: a lower court, agency, or public official. This flows naturally from the writ's status at common law in England as a command issuing in the king's name from the court of king's bench, and directed to any person, corporation, or inferior court of judicature within the king's dominions. Just as such a writ of *mandamus* at common law in England could be directed only to some person, entity, or inferior court within the king's dominions, the Delaware Superior Court can direct a *mandamus* only to a lower court, agency, or public official over which the Superior Court has power.[24]

Writs of mandamus require a government officer to perform a ministerial or nondiscretionary duty. "For a duty to be ministerial and thus enforceable by mandamus, the duty must be prescribed with such precision and certainty that

---

[24] *State ex rel. Abbott v. Aaronson*, 206 A.3d 260 (Del. 2019) (TABLE) (alterations, citations, footnotes, and internal quotation marks omitted) (quoting *Mandamus*, *Black's Law Dictionary* (10th ed. 2014), and then quoting *Brittingham v. Town of Georgetown*, 113 A.3d 519, 524 (Del. 2015), and then quoting *Marbury v. Madison*, 5 U.S. 137, 168 (1803)).

nothing is left to discretion or judgment."[25]  Generally speaking, "[t]he issuance of

a building permit is a ministerial duty of the building inspector."[26]  Thus, an

injunction seeking to compel the performance of the "purely ministerial and non-

discretionary duty of issuing . . . a building permit" in fact calls for "a common law

writ of mandamus" and thus, an applicant has "an adequate remedy at law."[27]

To the extent injunctive relief would be necessary to enforce Crown Castle's

proposed declaration, the Building Permit Injunction sounds in mandamus.  Crown

Castle does not meaningfully dispute this point; it does not argue that the City's

decision was based on any "discretionary authority to choose the manner in which it

---

[25] *State ex rel. Abbott v. Calio*, 860 A.2d 811 (Del. 2004) (quoting *Guy v. Greenhouse*, 637 A.2d 827 (Del. 1993)); *see also Darby v. New Castle Gunning Bedford Ed. Ass'n*, 336 A.2d 209, 211 (Del. 1975).

[26] *Vivari v. Francis*, 1988 WL 62787, at *3 (Del. Ch. June 15, 1988) (citing *Sgromolo v. City of Asbury Park*, 46 A.2d 661, 661 (N.J. Sup. Ct. 1946), and *Coyne v. Prichard*, 116 A. 315, 315 (Pa. 1922)).  On reargument, the *Vivari* Court found that while the plaintiff's claim to revoke a building permit sounded in mandamus, the interests of judicial economy counseled in favor of maintaining jurisdiction over the mandamus claim under the cleanup doctrine to avoid duplicative trials on the same facts.  *Vivari v. Francis*, 1988 WL 72808, at *1–2 (Del. Ch. July 12, 1988).  The Court acknowledged that "had mandamus been the only remedy requested, this Court would not have jurisdiction to compel performance of a duty imposed by law."  *Id*. at *1 (citing *Harden v. E. States Pub. Serv. Co.*, 122 A. 705 (Del. Ch. 1923)).

[27] *New Castle Cty. v. Mitchell*, 1980 WL 268066, at *1–2 (Del. Ch. Nov. 10, 1980); *see also New Castle Cty. v. Mitchell*, 1980 WL 268101, at *1 (Del. Ch. Nov. 21, 1980).  To be sure, there are situations where the government's discretionary authority regarding land use, zoning, and building codes could render a writ of mandamus unavailable.  *E.g.*, *Remedio v. City of Newark*, 337 A.2d 317, 318 (Del. 1975); *Potter v. City of Wilm.*, 201 A.3d 1161 (Del. 2019).  The Building Permits do not implicate those concerns.

will enforce its building code."[28] Rather, Crown Castle repeatedly characterized the Building Permits as "$20, over-the-counter" permits that ought to have been issued routinely.[29]

Crown Castle's request for equitable relief regarding the Building Permits both asks for too much, in the form of a "follow-the-law" injunction, and asks for what is already available at law, in the form of mandamus. It appears that Crown Castle's proposed declaratory judgment will resolve its entitlement to the Building Permits. But if it does not, and Crown Castle seeks to compel a government officer to perform her ministerial duty to issue them, the legal remedy of mandamus will afford relief. In either case, Crown Castle has an adequate remedy at law, and so the Building Permit Injunction cannot anchor subject matter jurisdiction in this Court.

---

[28] *Potter*, 201 A.3d at 1161; *see* D.I. 19 at 16–17.

[29] *See* Hr'g Tr. 6:13, 17:22, 20:11.

### B.    The Good Faith Injunction

Count II deals with the interplay between the Telecommunications Act of 1996 and the City Wireless Regulations. Crown Castle primarily seeks a declaration that the City Wireless Regulations conflict with the Telecommunications Act both facially and as applied, and so are invalid.[30] With the City Wireless Regulations so nullified, Crown Castle seeks a declaration that "the City may not require Crown Castle to obtain City Wireless Permits or any other permits or approvals beyond building and encroachment permits required for other utilities under the City Code."[31] While Crown Castle submits that no further agreement is required, it seeks an injunction ordering the City to negotiate with it in good faith.[32]

Crown Castle's declaratory judgment provides it with an adequate remedy at law. If Crown Castle's view of the law is confirmed, the need for a license agreement in the first instance would be obviated. To the extent Crown Castle's proposed declaration would leave open the possibility of a further agreement, a forward-looking injunction to negotiate in good faith is unnecessary. As I have explained, injunctions against future misconduct are generally unavailable absent a

---

[30] *See* Am. Compl. ¶¶ 128–35.

[31] *Id.* ¶ 11.

[32] *Id.* ¶ 139.

showing of a "reasonable apprehension of a future wrong."[33]   The parties'
negotiation disputes appear to be borne from their divergent views of the applicable
law and the City's authority.  Nothing in the Amended Complaint suggests that if
faced with a judgment affirming Crown Castle's view of the law, the City would
ignore the Court's declaration or continue to take a contrary position.[34]   Legal
remedies will therefore provide Crown Castle with complete relief.

## III.   CONCLUSION

Having determined that the Court lacks subject matter jurisdiction to hear
Crown Castle's claims, the case is dismissed, pursuant to Crown Castle's right to
transfer the matter to Superior Court under 10 *Del. C.* § 1902.  That election must
be made within sixty days.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*

---

[33] *Organovo*, 162 A.3d at 114–15 (footnotes and internal quotation marks omitted) (quoting *McMahon*, 532 A.2d at 606); *see also Preston Hollow*, 2019 WL 3801471, at *6.

[34] At oral argument, Crown Castle's counsel suggested that a favorable declaratory judgment would likely resolve the parties' dispute in its entirety.  *See* Hr'g Tr. 27:16–22.