68 A.3d 292

NORTHGATE CONDOMINIUM ASSOCIATION, INC., PLAINTIFF–APPELLANT, v. BOROUGH OF HILLSDALE PLANNING BOARD, CALIBER BUILDERS, INC., GOLDEN ORCHARDS ASSOCIATES, L.P. AND GOLDEN OAKS HOMEOWNERS ASSOCIATION, DEFENDANTS–RESPONDENTS.

Argued October 10, 2012—Decided May 13, 2013.

*Ira E. Weiner* argued the cause for appellant (*Beattie Padovano*, attorneys; *Mr. Weiner* and *John J. Lamb*, of counsel; *Mr. Weiner*, *Mr. Lamb* and *Daniel L. Steinhagen*, on the briefs).

*Russell R. Huntington* argued the cause for respondents Caliber Builders, Inc., Golden Orchards Associates, L.P., and Golden Oaks Homeowners Association, Inc. (*Huntington Bailey*, attorneys; *Mr. Huntington* and *Siobhan C. Spillane–Bailey*, on the brief).

*Harold Ritvo* argued the cause for respondent Hillsdale Planning Board.

Justice HOENS delivered the opinion of the Court.

Defendant Caliber Builders, Inc., sought to develop a parcel of land, most of which was situated in the Borough of Hillsdale, and which was owned by defendant Golden Orchards Association, L.P. Desirous of constructing an age-restricted housing development, which was a conditional use in the zone, Caliber submitted a preliminary site plan application to defendant Hillsdale Planning Board. Plaintiff Northgate Condominium Association, Inc., is a nonprofit corporation that manages and operates Northgate Condominiums, a previously-existing condominium community built on an adjacent parcel of land in Washington Township. Largely fueled by concerns relating to drainage, storm water run-off, and water quality, Northgate objected to the Caliber application on several grounds.

After conducting numerous hearings during which Northgate raised objections, and which also included testimony of lay and expert witnesses, exhibits, comments offered by interested members of the public and the oral presentations of counsel for both parties, the Planning Board voted to approve Caliber's application. The Board then memorialized its findings and conclusions when it adopted a resolution setting forth the reasoning that supported its decision.

Northgate thereafter filed its complaint in lieu of prerogative writs in which it challenged the Board's resolution on a variety of grounds. That effort failed before the trial and appellate courts, both of which upheld the decision of the Board to approve the conditional use application.

The appeal now before this Court raises two discrete issues that emerged in the context of the dispute between Northgate and Caliber over the Board's resolution approving the conditional use.

The first issue presented is whether the notice of the hearings on the application for the conditional use approval that Caliber published complied with the provisions of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –163. More specifically stated, Northgate challenges Caliber's notice by arguing that it failed to comply with the section of the MLUL that sets forth the requirements governing the manner in which the property to be developed must be identified. *See N.J.S.A.* 40:55D–11.

The second issue before this Court is whether Caliber demonstrated that its proposed development satisfied one of the conditions that the Hillsdale Borough Code requires be met as a prerequisite for approving a conditional use. In particular, Northgate asserts that Caliber did not demonstrate that its project design complied with certain requirements fixed by the Residential Site Improvement Standards (RSIS) for internal roadway widths and improvements. *See N.J.A.C.* 5:21–4.1, –4.2, –4.5. The dispute is significant because if the proposal did not satisfy the conditions fixed by the Ordinance, Caliber would not have been permitted to proceed before the Planning Board, *see N.J.S.A.*

40:55D–25(a)(4) (conferring authority to approve conditional uses on Planning Board), but instead would have been required to secure a use variance through an application to the Zoning Board of Adjustment, see N.J.S.A. 40:55D–70(d) (defining powers of Zoning Board to grant use variances).[1]

Because the appeal before this Court is narrowly focused, we will confine our recitation of the facts and our discussion of the governing law to that which is germane to our analysis.

## I.

The parcel of land that Caliber seeks to develop comprises approximately 12.5 acres. At all times relevant to this dispute, Northgate was a previously existing condominium community that is immediately adjacent and to the south of the parcel that Caliber seeks to develop. A small portion of the parcel is in Washington Township, but the bulk of it is in the Borough of Hillsdale, where it is included in the R–2 zone. The land was previously the site of a fruit orchard and it is commonly referred to as "Golden Orchards."

Beginning in 2002, Caliber engaged in a variety of efforts to develop the parcel. Those efforts included filing a site plan application with the Hillsdale Planning Board that sought approval to subdivide the property and build single-family homes; supporting a proposed amendment to the Hillsdale zoning ordinance that would have added age-restricted housing as a conditional use in the R–2 zone; and entering into a settlement agreement with Northgate pursuant to which Caliber would address Northgate's concerns about the impact of its 2002 development proposal on

---

[1] Although Hillsdale has a unified Board that is empowered to perform functions that the MLUL vests in both the planning board and the zoning board, the composition of the Board differs depending on which function is being performed and the statutory standards for approvals set forth in the MLUL differ as well.

flooding by constructing drainage buffers, undertaking landscaping projects, and reducing the number of units to be constructed.

In 2006, there was a second proposal to amend the Hillsdale zoning ordinance to allow age-restricted housing in the R–2 zone. That effort succeeded when, over Northgate's strong objections, the Borough adopted Ordinance No. 06–12 which amended section 310–53 of the Code of the Borough of Hillsdale. As amended, the Code would "permit single-family detached age restricted housing development in the R–2 Residential Zone as a Conditional Use." Among the numerous conditions that an applicant would need to satisfy in order to be granted permission to construct age-restricted housing in the R–2 zone was the requirement that the roadway widths and road improvements in any age-restricted development conform with the RSIS.

In light of the amended ordinance, Caliber abandoned its earlier plans to subdivide its property and build single-family homes. In place of that plan, on April 19, 2007, Caliber submitted a new application to the Hillsdale Planning Board seeking preliminary site plan and conditional use approval for an age-restricted housing development.

Caliber's proposal included thirty-seven age-restricted, single-family houses, thirty-one of which would be located in Hillsdale and six of which would be located in both Hillsdale and in Washington Township, the adjoining municipality. In addition, the proposal included one single-family home that would be located in Washington Township and would not be part of the age-restricted development. Caliber elected to pursue its application in Hillsdale prior to seeking the approvals that would be needed for the portions of the project located in neighboring Washington Township.

A.

The facts relevant to the first issue before this Court concern the adequacy of the notice of the hearings published by Caliber. Once Caliber's application was scheduled to be heard by the

Hillsdale Planning Board, Caliber arranged for notice to be published in *The Record* of Hackensack, *see N.J.S.A.* 40:55D–12(a), and it mailed notice to all property owners within 200 feet of the parcel that was the subject of the application, *see N.J.S.A.* 40:55D–12(b).

In relevant part, the notice provided as follows:

> PLEASE TAKE NOTICE that commencing on May 2, 2007 at 8:00 PM, the Planning Board of the Borough of Hillsdale will hold public hearings concerning the application of Caliber Builders, Inc., commonly known as Golden Orchards (south of Ell Road), for approvals pursuant to Section 310–53 of the Hillsdale Zoning Ordinance to construct a development of Single Family Detached Age Restricted Housing as a conditional use in the Zone. The project includes a total of forty (40) homes located in Hillsdale and adjacent Washington Township. The Applicant shall also request front yard setback variances, not to exceed five (5') feet, in order to stagger the setback of the homes. The property is known as Lot 3Q, Block 2101, Township of Washington and Lots 1.01 and 1.02, Block 506, Borough of Hillsdale, Bergen County, New Jersey on the current Tax Assessment Maps.

Because the application was not heard on the first scheduled date, Caliber again published the notice, which was altered only to set forth the new hearing date, and mailed copies to all property owners within 200 feet of the property.

In actuality, the tax lot numbers for the subject property given in the notice were not correct. In addition to errors in the lot number for the Washington Township portion of the site, which is not directly relevant to this appeal, the lot numbers utilized in the notice for the Hillsdale portion of the parcel were inaccurate. Identified in the notice as being Lots 1.01 and 1.02, the parcel instead should have been identified as Lot 1, in accordance with its designation on the official tax map.

The hearings on Caliber's application began on July 10, 2007. Northgate, which was the primary objector to the development, appeared at the hearing, as did other interested members of the public. At the start of the first hearing, Northgate raised numerous objections, including one that was directed to the adequacy of the notice and that challenged the jurisdiction of the Planning Board to proceed. Northgate's notice-based jurisdictional challenge related to whether Caliber had correctly identified the

property owners within 200 feet of the project who were entitled to notice by mail.

Recognizing that adequate notice was a jurisdictional prerequisite, the Planning Board requested advice from the Board Attorney. Based on his analysis of the way in which the 200 feet should be calculated, the attorney recommended that the Board reject the jurisdictional challenge and proceed to hear the substance of Caliber's proposal. Although Northgate therefore began its opposition to the Caliber proposal with an attack on the adequacy of the notice, there was no suggestion at that time that the notice was defective because the lot numbers used in the description of the property in Caliber's notice were inaccurate.

The error in the notice's lot designation did not come to light until the fourth day of hearings on the Caliber proposal. In advance of that hearing, scheduled for November 15, 2007, Caliber again published and mailed its notice. It inserted a new hearing date into the same notice that it had previously used, therefore continuing its use of the erroneous tax lot designation. The Board, however, published its own notice. The first paragraph of the Board's notice correctly identified the lot number for the portion of the site that was located in Hillsdale and added a previously-omitted lot number for the Washington Township portion of the site. The Board's notice provided:

> A special meeting is scheduled for Thursday, November 15, 2007 at 7:30 p.m. in the Council Chambers at the Hillsdale Municipal Building, 380 Hillsdale Avenue, Hillsdale, New Jersey. There will be a public hearing to continue the application of Caliber Builders for preliminary subdivision and site plan review at Lot 1, Block 506, Borough of Hillsdale and Lots 3Q and 7, Block 2101, Township of Washington and any other business that may properly come before the Planning Board. Formal action may be taken.

Northgate identified the inconsistency between the two notices and raised its objection in two ways. First, Northgate sent a letter [2] to the Planning Board the day before the date scheduled

---

[2] The record before this Court does not include a copy of the letter, but there is no dispute between the parties that it was sent or that it raised the issue of the discrepancy between the two notices.

for the November hearing in which it raised the discrepancy. Second, Northgate appeared on the date set for the hearing and began its presentation by arguing that one of the notices had to be defective. More to the point, Northgate argued that if the notice published by Caliber did not correctly identify the property that was the subject of the hearing, the Board lacked jurisdiction to proceed pursuant to the MLUL.

In response to that objection, Caliber explained that it had referred to the site as comprising Lots 1.01 and 1.02 because the Borough had instructed it to use that designation in connection with its 2002 application to develop the parcel. In addition, it pointed out that others, including the Department of Environmental Protection and Northgate, had previously referred to the parcel by using those erroneous lot designations.

After hearing from both parties, the Board requested the advice of its attorney, who immediately asked the Board's engineer, Christopher Statile, to give an explanation of the 1.01 and 1.02 lot designations. In response to that inquiry, Statile testified that because part of the parcel was farmland, and thus taxed at a different rate, the tax assessor had divided Lot 1 into Lots 1.01 and 1.02 for tax assessment purposes. Statile explained that those designations would be reflected on the tax record card maintained in the tax assessor's office. However, because the lot was never subdivided, the official tax map would not and did not use those designations, instead continuing to identify the land as one contiguous parcel designated as Lot 1.

After hearing the explanation from its engineer, the Board sought the advice of its attorney, who opined that the notice published by Caliber was adequate for jurisdictional purposes. Board counsel observed that the MLUL required designation of the property by block and lot number or by street address; that the property, which had no street address, was designated by its location in reference to Ell Road; and that the notice used the correct block number with which the lot numbers sufficiently corresponded so as to confer jurisdiction on the Board. Relying

on that analysis and on the attorney's advice, the Board voted to approve the notice. It then returned to the merits of Caliber's application.

B.

The second issue raised in this appeal relates to whether Caliber satisfied the condition that the Zoning Ordinance attached to the use requiring compliance with certain RSIS standards. More particularly, Ordinance No. 06–12 permits age-restricted housing developments if the proposal complies with a series of conditions, one of which is that roadway width and improvements conform with the RSIS. During the hearings before the Board, the RSIS compliance dispute had two components. The first arose in the context of the width of the streets as it related to parking. The second arose in the context of whether sidewalks were required on both sides of the roadway.

During the November 15, 2007, hearing, Northgate's expert witness challenged Caliber's designation of the development's access road as a rural roadway. In his view, the density of the development dictated that it be classified instead as a residential access street and that it be classified as a medium intensity roadway. That designation, according to Northgate's expert, required that the road have a parking lane and that it have sidewalks on both sides in order to comply with RSIS standards. Northgate therefore objected to Caliber's proposal because the access road had no parking lane and only had a sidewalk on one side.

In addressing whether Caliber's roadway design complied with the RSIS, the Board's expert Statile again voiced his opinion. During the hearing, he asserted both that the proposed design was consistent with his interpretation of the RSIS standards and that the RSIS permitted de minimis exceptions. After the hearing, he sent the Board a letter, with copies to all parties, in which he explained more thoroughly his opinions on RSIS compliance.

Statile explained in his letter that the proposed width of the roadway was adequate because, based on his analysis of the RSIS, a parking lane was not required. He observed that the development included adequate off-street parking that eliminated the need for a parking lane, thus conforming the width of the roadway with the RSIS. He further advised that he had confirmed his analysis by contacting the Department of Community Affairs, which administers compliance with the RSIS. Because the width of the roadway complied with the RSIS, he opined that neither a waiver nor a de minimis exception was needed.

In addition, Statile's letter advised that because the residential access road was appropriately classified as a low intensity roadway, sidewalks were only needed on one side, a condition with which the application also complied. He supported his conclusion about the proper classification of the roadway by explaining that, according to his calculations, the development would have fewer than four units per acre, therefore falling within the low intensity designation.

Finally, Statile observed that the RSIS standards permit "de minimis variance" and waiver, with the result that if the Board concluded that the design did not comply with the RSIS, it could still be approved by the Planning Board without resort to an application to the Zoning Board for a variance.

Northgate did not contest the findings or opinions contained in Statile's letter about the RSIS or his density calculation, nor did it challenge Statile's methodology when he testified during one of the subsequent hearings before the Board.

After several additional days of hearings and arguments by counsel, the Board voted to grant Caliber's application. It identified the basis for its action in a resolution adopted on January 29, 2008. In relevant part, the Board explained that it relied on the opinion from its expert engineer Statile that the proposal complied with the RSIS standards both as to roadway width and sidewalks.

## II.

Northgate filed an action in lieu of prerogative writs in which it challenged the Board's approval of the Caliber application. Although Northgate raised a variety of arguments in the course of the litigation, there are only two discrete issues before this Court. Therefore, we limit our discussion of the issues to the question of the adequacy of the notice published by Caliber and the question of whether the design of the roadway complied with RSIS standards.

### A.

Northgate has challenged the adequacy of the notice throughout the appellate process, arguing at each step, as it did before the Board, that proper notice is jurisdictional and that the defects in Caliber's notice deprived the Board of the authority to act. In the Law Division, Northgate's argument was rejected and the trial court upheld the Board's decision. On the issue of notice, the trial court concluded that a misidentification of the tax lot number does not in and of itself vitiate notice and therefore does not deprive the Board of jurisdiction. The trial court found support for its conclusion in published authority in which the Appellate Division concluded that the transposition of two digits in a block designation was an inconsequential clerical error that did not deprive the Board of jurisdiction. *See Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment,* 397 *N.J.Super.* 335, 348–49, 937 *A.*2d 334 (App.Div.2008). Moreover, the trial court found that the error in the Caliber notice was not such that a person reading it would have been unable to determine the location of the proposed development. Reasoning in the alternative, the trial court concluded that Northgate had waived its right to challenge the adequacy of the notice.

In an unpublished opinion, the Appellate Division upheld the decision of the trial court. In part, the appellate panel agreed that Northgate had waived its right to contest the adequacy of notice. Proceeding nonetheless to a consideration of the merits of

Northgate's jurisdictional attack, the panel concluded that the objection to the sufficiency of the notice failed on that analysis as well. Like the trial court, the Appellate Division regarded the error in the notice to be a clerical mistake that was insufficient to deprive the court of jurisdiction. In doing so, the panel relied on its published precedents, citing *Pond Run* for its conclusion that a developer's notice was adequate despite a clerical error that erroneously identified the property as being in Block "2713" rather than "2173." *See id.* at 349, 937 *A.*2d 334.

The appellate panel also found support in the more general proposition expressed in one of its published decisions that "notice should fairly be given the meaning it would reflect upon the mind of the ordinary layman." *Perlmart of Lacey, Inc. v. Lacey Twp. Planning Bd.*, 295 *N.J.Super.* 234, 238, 684 *A.*2d 1005 (App.Div. 1996). Applying that reasoning to the facts in this case, the Appellate Division held that "the critical determination is whether the notice provides a reasonably adequate description of the land subject to the application, such that concerned neighbors or members of the general public who may be affected by the proposed development may properly protest the proposed use or structure."

Using that standard, the appellate panel first noted that, although using a technically-inaccurate lot number, the description of the property in Caliber's notice included both the property's commonly-known name of Golden Orchards as well as a reference to its location being "south of Ell Road." Taking all of those facts into consideration, the panel concluded that the description of the site was "reasonably adequate to notify members of the public" about the identity of the property to be developed and that, therefore, the Caliber notice was adequate.

### B.

Northgate's complaint in lieu of prerogative writs also challenged the Planning Board's conclusion that the roadway in the proposed development complied with the RSIS. As it had before

the Planning Board, Northgate continued to argue that Caliber should have been required to seek either a use variance or that it should have requested a waiver or de minimis exception because the roadway did not satisfy the condition in the Ordinance requiring RSIS compliance.

The Law Division was not persuaded by Northgate's arguments. It reasoned that RSIS compliance was a condition generally applicable to all uses throughout the zone rather than a condition that was specific to age-restricted housing. Therefore, the trial court concluded that compliance could be, and was, waived by the Planning Board.

In addressing Northgate's arguments about RSIS compliance on appeal, the Appellate Division took a different approach. First, the appellate panel considered the argument that Northgate had raised before the Planning Board and the trial court relating to the required width of the access road. Rather than agreeing with the trial court that the RSIS condition could be waived, the appellate court concluded that the Caliber project's roadway design complied with the RSIS requirements relating to width. In short, the panel agreed with the interpretation of the RSIS provided to the Board by its expert engineer Statile, that a parking lane would not be required because there was adequate off-street, on-site parking.

Second, the Appellate Division considered Northgate's challenge to the adequacy of the roadway design relating to sidewalks. Before the Appellate Division, Northgate raised a somewhat different challenge to the sidewalk requirement than the one it had pursued earlier. On appeal, in place of a dispute about the roadway's classification as a residential access road, rather than a rural roadway, Northgate challenged the Board's conclusions that the access road was a low intensity roadway and that only one sidewalk was needed. Before the Appellate Division, Northgate argued that the Board's conclusion about roadway intensity was flawed because it relied on an improper calculation of the gross acreage on which houses would be built.

In particular, Northgate contended that the gross acreage should not have included "environmentally constrained" land that could not be developed. It argued that if that land was excluded from the calculation, the Board would have found that the proposed access road would be serving 4.36 units per acre. Because that would mean that the roadway would be classified as medium intensity under the RSIS, Northgate asserted that Caliber should have been required to provide sidewalks on both sides of the street or to secure a variance that would permit it to provide only one sidewalk along the road.

In rejecting this argument, the Appellate Division first noted that Northgate did not identify anything in the record that demonstrated what part of the parcel was environmentally constrained. In the appellate court's view, there was therefore no ground on which Northgate could challenge the Board's calculation or its conclusion as to the appropriate classification of the intensity of the roadway. Reasoning in the alternative, the appellate panel agreed with Caliber's assertion that "customary rounding techniques" would permit Northgate's calculation of 4.36 units per acre to be rounded down to four units per acre for purposes of determining intensity.

In summary, the Appellate Division rejected Northgate's assertion that the faulty description of the property in Caliber's notice deprived the Planning Board of jurisdiction as well as its argument that Caliber failed to prove its development proposal complied with the applicable RSIS criteria. We thereafter granted Northgate's petition for certification. 208 *N.J.* 337, 27 *A.*3d 950 (2011).

### III.

In their arguments before this Court, the parties have narrowed their focus both as to the notice debate and as to RSIS compliance.

To begin with, although both the trial and appellate courts first addressed and found merit in the assertion that Northgate failed

to raise the notice question and therefore had waived the alleged jurisdictional defect, the parties do not advance the waiver argument before this Court. Rather, it is apparent that neither the trial nor the appellate courts were provided, as this Court has been, with the complete transcript of the proceedings on November 15, 2007, during which the notice issue was discussed and decided by the Board. As a result, there is no argument being made before this Court that Northgate waived its jurisdictional challenge before the Board based on the claimed defect in Caliber's notice.

In addition, Northgate's petition for certification used a more focused approach to RSIS compliance, resting its argument on the propriety of the calculations used to classify roadway intensity.

For these reasons, we have limited our analysis to two issues: whether the notice of hearing published by Caliber sufficiently complied with the requirements of the MLUL to confer jurisdiction on the Board and whether the design of the internal roadway complied with the RSIS for roads of like intensity.

Concerning the adequacy of the notice, Northgate asserts that the MLUL is very specific, requiring a developer to identify the property either by its street address or by its block and lot number. It argues that the Appellate Division improperly engrafted a third means of identifying the property onto the MLUL when it found that the designation "Golden Orchards (south of Ell Road)" was sufficient to notify the public of the property's location when tested against a more general analysis of adequacy of notice.

Concerning compliance with the RSIS, before this Court Northgate has limited its focus by challenging only the calculations supporting the roadway intensity analysis. That challenge is based on the argument that the RSIS requires that undevelopable land be subtracted from the gross acreage of a development in order to determine intensity; that complying with this requirement yields a calculation of 4.36 units per acre and therefore requires that the access road be classified as a medium intensity roadway; and that there is no authority for the Appellate Divi-

sion's alternative holding that a municipality can use "rounding" to determine a roadway's intensity under the RSIS. For these reasons, Northgate argues that the judgment of the Appellate Division should be reversed.

Caliber urges us to affirm the judgment of the Appellate Division. It first argues that its notice complied with the MLUL because the misidentification of the lot number was a mere technical error that would not have prevented anyone who read the notice or viewed the tax map from ascertaining the location of the property to be developed. Caliber further contends that because the notice contained additional descriptive language and referred to the site plan approval application, which contained the correct lot designation and which was on file with the municipality, the property was adequately identified for notice purposes. Moreover, Caliber points out that the notice must have been adequate because when the Board published its own notice that included the correct lot designations, no new objectors appeared.

With regard to compliance with the RSIS, Caliber first argues that because it is a generally-applicable condition, compliance can be waived by the Planning Board when considering a conditional use application. Furthermore, Caliber asserts that its roadway design complied with the RSIS because, as the Board's engineer explained, the intensity of the development was less than four units per acre, thus meeting the criterion for a low intensity roadway.

The Hillsdale Planning Board, for the most part, reiterates the arguments presented by Caliber. In summary, the Planning Board contends that the "minor typographical errors" in the tax lot numbers do not affect the sufficiency of the notice. The Board asserts that anyone who was interested in contesting Caliber's application had ample information on which to decide whether to appear which, in fact, many citizens did. As for compliance with the RSIS, the Board argues that the RSIS allows municipalities to exercise flexibility. It argues that Northgate's challenges should be rejected because the Board correctly concluded that the road-

way width complied with the RSIS and that it appropriately relied on its expert engineer in determining the intensity of the roadway. Finally, the Board urges us to agree with the Appellate Division's alternate approach that permitted downward rounding as part of the intensity calculation.

## IV.

We have previously recognized that one of the purposes for the enactment of the MLUL was the Legislature's intention to create "statewide uniformity of process and practices in the areas of zoning and land use." *Rumson Estates, Inc. v. Mayor & Council of Fair Haven*, 177 *N.J.* 338, 356, 828 *A.*2d 317 (2003); *accord Pizzo Mantin Grp. v. Twp. of Randolph*, 137 *N.J.* 216, 225, 645 *A.*2d 89 (1994). In order to effectuate the legislative intent to create statewide uniformity, we have generally held that the requirements established in the MLUL are to be applied strictly. *Manalapan Holding Co. v. Planning Bd.*, 92 *N.J.* 466, 482, 457 *A.*2d 441 (1983).

We have therefore observed that "[t]he [MLUL] prescribes [a] strict timetable and a careful methodology. It does not imply waiver or relaxation of its terms." *Ibid.* Similarly, we have held that municipalities are not free to add to the statute's require-ments where the Legislature has utilized mandatory language. *See Pizzo Mantin, supra*, 137 *N.J.* at 229, 645 *A.*2d 89 ("The MLUL evinces a legislative design to require consistency, unifor-mity, and predictability in the subdivision-approval process.").

## A.

The first question before this Court is whether the notice published by Caliber complied with the statutory requirements relating to notice notwithstanding the erroneous tax lot designa-tion. It is a fundamental principle of law that significant land use decisions require public hearings and that hearings require prior public notice. *See, e.g.,* J.R. Kemper, Annotation, *Construction and Application of Statute or Ordinance Provisions Requiring*

*Notice as Prerequisite to Granting Variance or Exception to Zoning Requirement,* 38 *A.L.R.*3d 167, 180 (1971).

As a consequence, our land use laws have long included a public notice requirement, *see Oliva v. City of Garfield,* 1 *N.J.* 184, 190, 62 *A.*2d 673 (1948) (construing public notice requirement included in 1928 Zoning Act), and we have regarded the public notice requirement to be jurisdictional, *Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment,* 154 *N.J.* 62, 79, 711 *A.*2d 282 (1998); *Oliva, supra,* 1 *N.J.* at 190, 62 *A.*2d 673; *see Hendey v. Ackerman,* 103 *N.J.L.* 305, 308, 136 *A.* 733 (Sup.Ct.1927); *Pond Run, supra,* 397 *N.J.Super.* at 350, 937 *A.*2d 334. Failure to provide adequate notice, or proceeding upon defective notice, deprives a land use board of the power to take any official action and renders null and void any decisions it has made. *Twp. of Stafford, supra,* 154 *N.J.* at 79, 711 *A.*2d 282; *accord Shakoor Supermarkets, Inc. v. Old Bridge Twp. Planning Bd.,* 420 *N.J.Super.* 193, 201, 19 *A.*3d 1038 (App.Div.), *certif. denied,* 208 *N.J.* 598, 34 *A.*3d 780 (2011); *Brower Dev. Corp. v. Planning Bd.,* 255 *N.J.Super.* 262, 270, 604 *A.*2d 994 (App.Div.1992).

There are a number of sections of the MLUL that bear generally on notice, *see, e.g., N.J.S.A.* 40:55D–11 to –15, but there is only one statutory provision that is directly relevant to our consideration of whether the notice that Caliber published was adequate to confer jurisdiction on the Board, *see N.J.S.A.* 40:55D–11. That section provides as follows:

> Notices pursuant to [*N.J.S.A.* 40:55D–12 and –13] shall state the date, time and place of the hearing, the nature of the matters to be considered and, in the case of notices pursuant to [*N.J.S.A.* 40:55D–12], an identification of the property proposed for development by street address, if any, or by reference to lot and block numbers as shown on the current tax duplicate in the municipal tax assessor's office, and the location and times at which any maps and documents for which approval is sought are available pursuant to [*N.J.S.A.* 40:55D–10].
>
> [*Ibid.*]

This appeal requires us to interpret the language in *N.J.S.A.* 40:55D–11 that governs the manner in which the notice will

provide the identification of the property that is the site of the proposed development.

Although we have not yet had occasion to construe this section of the MLUL, the Appellate Division has considered it in two published opinions that formed the basis for the debate between the parties to this appeal. *See Pond Run, supra,* 397 *N.J.Super.* at 348–49, 937 *A.*2d 334 (concluding that notice complied with MLUL in spite of minor typographical error in lot number); *Perlmart, supra,* 295 *N.J.Super.* at 239, 684 *A.*2d 1005 (observing that notice must be "such that the ordinary layperson could intelligently determine whether to object or seek further information").

Because these two decisions are central to the dispute between the parties to this appeal, we address them at length. We begin with the decision of the Appellate Division in *Perlmart.* There, the court construed the statute's requirement that public notice of a hearing set forth "the nature of the matters to be considered." *Perlmart, supra,* 295 *N.J.Super.* at 236, 684 *A.*2d 1005 (quoting *N.J.S.A.* 40:55D–11). In that appeal, plaintiffs argued that the notice was deficient because it did not contain a sufficient description of the proposed development, referring generally to variances and to the creation of commercial lots without revealing that a shopping center was being proposed. *Id.* at 237, 684 *A.*2d 1005. The Appellate Division agreed with plaintiffs that the notice was inadequate, finding support in the purpose of the notice requirement of the MLUL.

> It is, to us, plain that the purpose for notifying the public of the "nature of the matters to be considered" is to ensure that members of the general public who may be affected by the nature and character of the proposed development are fairly apprised thereof so that they may make an informed determination as to whether they should participate in the hearing[,] or, at the least, look more closely at the plans and other documents on file.
>
> [*Id.* at 237–38, 684 *A.*2d 1005.]

The appellate court explained that in order to accomplish this purpose, a notice must do more than simply recite the technical terms of a proposed development. *Id.* at 238, 684 *A.*2d 1005. Instead, the "critical element" of a public notice is "an accurate

description of what the property will be used for under the application." *Ibid.* It is in this context, that is, in construing the rather general language of the MLUL describing the requirement that the notice disclose "the nature of the matters to be considered," that the panel reached its conclusion. Using that statutory standard, the panel concluded that in order to be adequate, notice must "inform the public of the nature of the application in a common sense manner such that the ordinary layperson could intelligently determine whether to object or seek further information." *Id.* at 239, 684 *A.*2d 1005.

The Appellate Division next considered the meaning and intent of the notice requirement imposed by the MLUL, and the implications of its decision in *Perlmart*, when it again was called upon to address the adequacy of a notice. *See Pond Run, supra,* 397 *N.J.Super.* at 347–52, 937 *A.*2d 334. There, plaintiffs challenged the notice both because it contained a typographical error that identified the property as being located in block "2713" rather than "2173" of the municipality and because it did not sufficiently identify the proposed use. *Id.* at 347, 350, 937 *A.*2d 334. The appellate court rejected the attack on the adequacy of the technical description of the property's location, concluding that a "reasonable person receiving such a notice in the mail" would have been able to determine the true location of the development and that "the typographical error in this case did not vitiate the legal sufficiency of the notice." *Id.* at 349, 937 *A.*2d 334.

The Appellate Division based its conclusion about the adequacy of the identification of the property on two considerations. First, it observed that the notice accurately indicated that the subject property appeared on tax map 213 and that the site's actual location would have been apparent to anyone who looked at the map. *Ibid.* Second, the court commented that all property owners within two hundred feet were properly notified and that they could not have reasonably believed that they were receiving notice about a property that was located more than one mile away. *Ibid.* Without directly addressing the fact that the developer's notice

did not conform to the technical requirements of *N.J.S.A.* 40:55D–11, the appellate panel instead applied a more general approach to notice, finding it dispositive that a "reasonable person" would have been able to glean the necessary information despite the error. *See Pond Run, supra,* 397 *N.J.Super.* at 348–49, 937 *A.*2d 334.

There is no doubt about the clarity of the statutory requirement concerning the designation of the property. It offers two alternatives, requiring use of either the street address or the lot and block numbers as shown on the current tax map. *N.J.S.A.* 40:55D–11. Northgate would have us apply that language strictly and conclude that because the notice designated the location as being Lots 1.01 and 1.02 rather than as Lot 1, the Planning Board lacked jurisdiction. Caliber and the Planning Board would have us embrace instead the more flexible approach taken by the Appellate Division regarding notices generally to conclude that the Caliber notice was adequate to confer jurisdiction on the Board to act.

We decline to adopt categorically either approach in the unique circumstances of this appeal. Simply put, this applicant's notice, although utilizing lot numbers that were not included on the official tax map, did not thereby misidentify the lot to be developed. The block number used in the notice was correct. Had Northgate, or any other interested party, looked at the tax map, it would have been obvious that Lot 1 was a single unified parcel, and not a parcel that had been subdivided formally into two lots called 1.01 and 1.02.

Moreover, Caliber only used the lot numbers that it included in the notice in reliance on directions it had previously been given by the tax assessor. Although the applicant should have verified that information by reviewing the current map, we do not deem the omission of that step to be fatal in this particular matter. We reach that conclusion in part because of other information in the notice that made it clear what parcel was the focus of the development application.

The notice, by referring to Golden Orchards, identified the property in question by using the commonly-known name for the parcel. The notice also, by referring to the location as being South of Ell Road, made the identity of the property clear. In the context of a parcel of land that had no street address, that had been the focus of several earlier development proposals, and that previously had been the target of opposition by Northgate and others, the minor misstatement in the lot numbers used in reliance on directions from the municipal tax assessor did not deprive the Board of jurisdiction to act.

Nor is there any suggestion in this record that there was any confusion about the location for the proposed development, a conclusion we find is apparent based on a consideration of two additional factors. First, many interested property owners, of which Northgate was but one, appeared for the hearings, both before and after the error became apparent. Second, after the Board published its notice using the accurate lot designation, no new objector stepped forward. Had a new objector appeared on November 15, 2007, and had such an objector asserted that it had not been afforded adequate notice earlier due to the error in Caliber's notice, the Board would not have been able to ignore it. But as no new objector has ever appeared and contested the adequacy of the property's description for notice purposes, we decline to conclude that the Board lacked jurisdiction to proceed.

As the Appellate Division reasoned when it considered the significance of the typographical error in the notice in *Pond Run*, we agree that a minor, clerical deviation that had no potential to mislead any interested member of the public does not fall short of the statutory requirement for describing the property to be developed.

That, however, is not to say that we agree that there is a great deal of flexibility in the statute as it relates to the manner in which a property is identified. As the Appellate Division has recognized, *see Pond Run, supra,* 397 *N.J.Super.* at 350–55, 937 *A.*2d 334 (applying *Perlmart* notice analysis only to challenge about suffi-

ciency of notice as it related to "nature of the matters to be considered"), the more flexible approach to notice adopted in *Perlmart* is appropriately applied to those aspects of the statute that include only generally described requirements, such as "notice of the matters to be considered," *N.J.S.A.* 40:55D–11. In contrast, the clarity of the words the Legislature used in describing the manner of identifying the property affords far less latitude. Here, we have no doubt that, in the circumstances of this record, the minor error in the notice did not violate the statute nor deprive the Board of jurisdiction to act.

### B.

■ The second issue before us in this appeal relates to whether the roadways in the proposed development complied with the RSIS. More specifically, this issue rests on the proper classification of the roadway for RSIS compliance purposes in terms of its intensity.

In January 1993, the Legislature enacted the Site Improvement Standards Act, *L.* 1993, *c.* 32, codified at *N.J.S.A.* 40:55D–40.1 to – 40.7, as part of which the Commissioner of the Department of Community of Affairs (DCA) was directed to promulgate statewide residential development site improvement standards. *See N.J.S.A.* 40:55D–40.3 to –40.4. The purpose of that statute was to replace the "multiplicity of standards for subdivisions and site improvements" that existed throughout the State with "a uniform set of technical site improvement standards for land development." *N.J.S.A.* 40:55D–40.2. After a lengthy period of study and consideration of input from numerous experts and a period of publication and comment, the DCA issued the RSIS. *See N.J. State League of Municipalities v. Dep't of Cmty. Affairs,* 158 *N.J.* 211, 219–20, 729 *A.2d* 21 (1999) (detailing process by which DCA drafted and implemented RSIS); *see generally N.J.A.C.* 5:21–1.1 to –8.1 (New Jersey Residential Site Improvement Standards).

The RSIS governs all residential site improvements in the State, superseding any contrary requirements that might be found

in municipal ordinances. *N.J.A.C.* 5:21–1.5(a)–(b); *see also N.J. State League, supra,* 158 *N.J.* at 225–27, 729 *A.*2d 21 (upholding validity of RSIS provisions that conflict with local ordinances). The RSIS standards were intended to "establish minimum rules for site improvements … [and] the maximum that … boards may require…." 28 *N.J.R.* 2671(a) (June 3, 1996). When a municipal ordinance requires subdivision or site plan approval, *see N.J.S.A.* 40:55D–37, the planning board must evaluate all such applications for approval to ensure compliance with the RSIS, *see N.J.A.C.* 5:21–1.7. A failure to abide by the requirements of the RSIS is treated as a violation of the MLUL, *N.J.A.C.* 5:21–1.9(a), and violators may be prevented from constructing or occupying a development that does not comply with the requirements of the RSIS, *see N.J.S.A.* 40:55D–18.

Before this Court, the focus of the RSIS dispute is narrow. Northgate's challenge, as it relates to RSIS, is limited to how intensity is calculated, because in its view, the roadway's intensity level dictates the RSIS requirements that are to be applied. Northgate's argument about intensity has two aspects. First, it asserts that the Board's calculations were flawed because they were based on the size of the entire parcel rather than the size of the parcel after excluding environmentally sensitive land. That is, Northgate argues that although the entire parcel covers 9.79 acres, it includes two acres of wetlands that should be subtracted for purposes of the intensity calculation. Using that figure, plaintiff asserts that the density is 4.36 dwelling units per acre, which translates into the classification of the access road as a medium intensity roadway. Second, plaintiff argues that the Appellate Division erred by concluding in the alternative that the Board could round that number down and therefore achieve a lower density that could support the designation of the roadway as being of low intensity.

Northgate's first argument rests on its factual assertion that there are two acres of wetlands on the site that should have been excluded from the calculation of density. Although there are

several references in the record before the Planning Board to the existence of wetlands on the site, all of them relate to general descriptions of the parcel and the layout of the development, the water table, storm water management and drainage consider-ations. Nowhere in the record [3] is there a calculation of the extent of the wetlands and nothing in the record supports Nor-thgate's factual assertion that there are precisely two acres of wetlands on the site.

▆▆▆▆ Before this Court Northgate limits its argument that the development did not comport with the RSIS by challenging only the accuracy of the density calculation. In doing so, however, it points to nothing in the record that explains the basis on which it now asserts that the calculation relied on by the Board was flawed. This lack of a factual basis in the record is significant because, in challenging the Board's decision, Northgate bears the burden of demonstrating that the Board's decision was arbitrary, capricious, or unreasonable. *See Medici v. BPR Co.*, 107 *N.J.* 1, 15, 526 *A.*2d 109 (1987); *Kramer v. Bd. of Adjustment,* 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965). "Because a [board's] actions are presumed valid, the party 'attacking such action [has] the burden of proving otherwise.' " *Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment,* 172 *N.J.* 75, 81, 796 *A.*2d 247 (2002) (quoting *N.Y. SMSA Ltd. P'ship v. Bd. of Adjustment,* 324 *N.J.Super.* 149, 163, 734 *A.*2d 817 (App. Div.), *certif. denied,* 162 *N.J.* 488, 744 *A.*2d 1210 (1999)). The challenger must show that the Board engaged in " 'willful and unreasoning action, without consideration and in disregard of circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been

---

[3] Indeed, Northgate's assertion is contrary to the opinion of its expert that it submitted to the Appellate Division in support of its motion for reconsideration. There, the expert conceded that the density calculation was 3.779 units per acre, thus corresponding with a low intensity roadway under the RSIS. Although that expert opinion refers to the potential for a calculation that would lead to a classification of medium intensity, no such analysis was included.

reached.' " *Worthington v. Fauver*, 88 *N.J.* 183, 204–05, 440 *A.2d* 1128 (1982) (quoting *Bayshore Sewerage Co. v. Dep't of Envtl. Prot.*, 122 *N.J.Super.* 184, 199, 299 *A.2d* 751 (Ch.Div.1973), *aff'd o.b.*, 131 *N.J.Super.* 37, 328 *A.2d* 246 (App.Div.1974)).

Because Northgate is required to point to evidence in the record to demonstrate that the Board's decision was arbitrary or capricious, its inability to identify any evidence in the record that identifies and quantifies the extent of the wetlands that it contends should have been excluded from the density calculation is fatal to its appellate challenge of the Board's finding about the roadway's intensity. Because that is the only challenge now made to the Board's analysis of RSIS compliance, we reject Northgate's attack on the Board's RSIS findings and conclusions.

Notwithstanding that infirmity, we agree with Northgate's alternate argument. The RSIS regulation relating to intensity of roadways makes it plain that the drafters did not intend that "rounding" techniques could be utilized to alter its standards. On the contrary, the regulation defines a low intensity development as one that contains "[l]ess than or equal to 4" dwelling units per gross acre. *N.J.A.C.* 5:21–4.2(b). It defines a medium intensity development as one that contains "[m]ore than 4 and less than or equal to 8" dwelling units per gross acre. *Ibid.* The meaning of the phrases "less than or equal to 4" and "more than 4 and less than or equal to 8" could not be more clear. The language does not permit resort to rounding techniques. Although the appellate panel's alternate analysis was unnecessary to the conclusion it reached about RSIS compliance, we are constrained to conclude that it nonetheless was in error.

## V.

The judgment of the Appellate Division is affirmed as modified.

Chief Justice RABNER; Justices LaVECCHIA, ALBIN, and PATTERSON; and Judges RODRÍGUEZ and CUFF (both temporarily assigned) join in Justice HOENS's opinion.

*For affirmance*—Chief Justice RABNER, and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, Judges RODRÍGUEZ (t/a), Cuff (t/a)—7.