**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3244-22
A-1636-23

MARGARET BENNETT,

     Complainant-Appellant,

v.

JUDITH SULLIVAN, RAMAPO
INDIAN HILLS REGIONAL
HIGH SCHOOL BOARD OF
EDUCATION, BERGEN
COUNTY,

     Respondents-Respondents.

_____

NEW JERSEY DEPARTMENT
OF EDUCATION, SCHOOL
ETHICS COMMISSION,

     Respondent.

_____

     Argued April 3, 2025 – Decided April 30, 2025

     Before Judges Walcott-Henderson and Vinci.

     On appeal from the New Jersey Department of Education.

Margaret Bennett, appellant, argued the cause pro se.

Lauren B. Connell Madia argued the cause for respondents Judith Sullivan and Ramapo Board of Education in A-3244-22 (Dwyer Connell & Lisbona LLP, attorneys; Lauren B. Connell Madia, on the brief).

Weston J. Kulick argued the cause for respondent Judith Sullivan in A-1636-23 (Porzio, Bromberg & Newman, PC, attorneys; Kerri A. Wright, of counsel and on the brief; Weston J. Kulick, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent School Ethics Commission in A-3244-22 (Sadia Ahsanuddin, Deputy Attorney General, on the statements in lieu of brief).

PER CURIAM

In these back-to-back appeals, complainant Margaret Bennett appeals from two decisions of the New Jersey Department of Education's School Ethics Commission, dated May 23, 2023 and December 19, 2023, dismissing her complaints against respondent Judith Sullivan, a former member of the Ramapo Indian Hills Regional Board of Education.  We affirm both orders.

I.

In March 2022, Sullivan filed a citizen's complaint against Bennett in municipal court alleging harassment and witness tampering in violation of N.J.S.A. 2C:33-4(c) and N.J.S.A. 2C:28-5(a)(5), respectively.  The charges

alleged Bennett critiqued, attacked, and mocked Sullivan in person at Board meetings, via social media, local newspapers, and emails.

In response to learning of the complaint against her, Bennett filed an Open Public Records Act (OPRA) request under N.J.S.A. 47:1A-1 to -13 with the Franklin Lakes Police Department, the Franklin Lakes Prosecutor's Office, and municipal court, seeking documents, information, and any filings from Sullivan. According to Bennett, on September 25, 2022, the custodian of records for the prosecutor's office and police department responded to the request.

On September 27, 2022, following a hearing, the municipal court dismissed Sullivan's complaint, finding no probable cause to sustain the claims of harassment and witness tampering against Bennett. Bennett filed a second OPRA request in December 2022 with the Franklin Lakes Prosecutor's Office seeking correspondences between Sullivan and the prosecutor that were not included in the September 2022 OPRA response.

On January 5, 2023, Bennett filed the first of two ethics complaints alleging Sullivan violated the School Ethics Act (the Act), N.J.S.A. 18A:12-21 to -34. The Act provides in pertinent part:

> e. I will recognize that authority rests with the board of education and will make no personal promises nor take any private action that may compromise the board.

f. I will refuse to surrender my independent judgment to special interest or partisan political groups or to use the schools for personal gain or for the gain of friends.

g. I will hold confidential all matters pertaining to the schools which, if disclosed, would needlessly injure individuals or the schools. In all other matters, I will provide accurate information and, in concert with my fellow board members, interpret to the staff the aspirations of the community for its school.

. . . .

i. I will support and protect school personnel in proper performance of their duties.

j. I will refer all complaints to the chief administrative officer and will act on the complaints at public meetings only after failure of an administrative solution.

[N.J.S.A. 18A:12-24.1(e)-(g), (i)-(j).]

Bennett first alleged Sullivan violated N.J.S.A. 18A:12-24.1(e), (f), and (g) when she "took Board emails and documents to the Franklin Lakes Police and Franklin Lakes Municipal Prosecutor and asked them to take criminal action against [Bennett]." Relying on the documents received in response to the September 2022 OPRA request, Bennett claimed there were "410 direct references" to Sullivan's status on the Board which demonstrated she had filed the municipal complaint in her capacity as a Board member, and had "falsely

portrayed the documents and purposefully misrepresented [Bennett]'s on the record statements at public board meetings."

Bennett further alleged Sullivan used information obtained "solely in her capacity as a [B]oard member to gain an unwarranted advantage, which in this case was to retaliate against [Bennett]" for disagreeing with Sullivan on topics before the Board. Bennett specifically noted that in the municipal court trial Sullivan introduced a November 2020 letter from Board counsel, Stephen Fogarty (Fogarty letter), which was only available to Sullivan in her capacity as a Board member. Bennett further argued Sullivan failed to include a disclaimer with regard to her use of Board documents, statements, or filings to clarify that her statements were not authorized by the Board, and some emails used in the trial were from Sullivan's official Board email address.

Sullivan moved to dismiss Bennett's first complaint, arguing the allegations were frivolous and based on what she characterized as Bennett's "personal vendetta" against her. She explained that in November 2021, "fearing for her safety," she filed the harassment and witness tampering charges against Bennett and submitted the Fogarty letter to the municipal court as evidence of Bennett's ongoing commentary on her social media posts. According to Sullivan, the "extent of the obsessive dissection of [her] public social media

posts was so alarming . . . she included those documents to the [m]unicipal [c]ourt in making her case against . . . Bennett for harassment."

On May 23, 2023, the Commission granted Sullivan's motion and dismissed Bennett's first complaint, concluding Bennett did not present factual evidence needed to establish a violation of N.J.S.A. 18A:12-24.1. The Commission determined it was clear Sullivan had filed harassment and witness tampering charges against Bennett in her capacity as a private citizen, regardless of having "to refer to, rely upon, or otherwise reference her position on the Board, Board documents and/or materials." The Commission stated,

> [t]o the extent that [Sullivan] introduced her own social media posts (as a private citizen) with [Bennett]'s commentary included, she did so in order to highlight [Bennett]'s dissection of her posts in order [to] prove the harassment charges. In addition, [Sullivan]'s submission of a letter that she believed (albeit incorrectly) was sent to [Bennett] also did not compromise the Board because it did not contain any confidential information. Because [Sullivan's] action was private, [Bennett] must prove the Board was compromised by her action, and she cannot do so.

The Commission further explained even if it assumed Sullivan was acting in her official capacity, there was insufficient factual evidence the actions she took were so beyond the scope of her duties that it had the potential to compromise the Board.

Prior to the Commission's decision as to the first complaint, Bennett filed a second complaint on March 9, 2023, alleging Sullivan violated N.J.S.A. 18A:12-23.1(i) and (j) by failing to "support and protect school personnel," and "refer all complaints to the chief administrative officer." According to Bennett, documents she received in conjunction with her December 2022 OPRA request showed Sullivan asking the prosecutor to investigate district staff and administrators, and their handling of OPRA requests. Bennett averred Sullivan had violated N.J.S.A. 8A:12-24.1(i) by contacting the prosecutor and taking "deliberate action that resulted in undermining, opposing, compromising, and harming school personnel in the . . . proper performance of their duties." Bennett further argued Sullivan's referral to the prosecutor's office instead of to the chief school administrator violated N.J.S.A. 18A:12-24.1(j).

On December 19, 2023, the Commission granted Sullivan's motion and dismissed Bennett's second complaint, finding no facts to support the allegation district staff suffered any harm because of Sullivan's referral. The Commission found "insufficient facts and circumstances presented" to demonstrate Sullivan's actions "resulted in undermining, opposing, compromising[,] or harming school personnel" because no evidence established the Board personnel suffered any harm. As to Bennett's claims Sullivan violated N.J.S.A. 18A:12-24.1(j), the

Commission concluded Sullivan is at liberty to discuss criminal matters with the appropriate authorities, and Bennett's complaint presented insufficient facts and circumstances "to lead a reasonable person to believe that N.J.S.A. 18A:12-24.1(j) was violated" because the Act does not require a chain of command and Sullivan's municipal complaint was criminal in nature.

Bennett appealed the May 23, 2023, and December 19, 2023, determinations dismissing her ethics complaints. She argues the Commission's decisions were arbitrary, capricious, and unreasonable "because there was a factual dispute that needed resolution." On March 31, 2025, we granted Bennett's motions to supplement the record as to both appeals to include a letter from former Board Administrator Thomas Lambe.

## II.

An appellate court's "review of an administrative agency's action is usually limited." In re DiGuglielmo, 252 N.J. 350, 359 (2022) (citing Russo v. Bd. of Tr., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). This court normally attaches a "strong presumption of reasonableness" to an agency decision. Parsells v. Bd. of Educ. of Borough of Somerville, 472 N.J. Super. 369, 375 (App. Div. 2022) (quoting In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001)).

We will not disturb an agency's action unless it was clearly "arbitrary, capricious, or unreasonable." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (citation omitted). Arbitrary and capricious action means that an agency engaged in "willful and unreason[able] action, without consideration and in disregard of [the] circumstances." Northgate Condo. Ass'n v. Borough of Hillsdale Planning Bd., 214 N.J. 120, 145 (2013) (quoting Worthington v. Fauver, 88 N.J. 183, 204 (1982)).

The reviewing court "can intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." George Harms Constr. v. Tpk. Auth., 137 N.J. 8, 27 (1994). Likewise, judicial review of an agency's factual determination is highly deferential. In re Bridgewater, 95 N.J. 235, 245 (1984). "[I]f substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992).

To that end, though we engage in a "de novo" review of "an agency's interpretation of a statute," DiGuglielmo, 252 N.J. at 359-60, "[a]n administrative agency's interpretation of statutes and regulations within its

A-3244-22

implementing and enforcing responsibility is ordinarily entitled to . . . deference," Parsells, 472 N.J. Super. at 376 (alteration in original) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)).  This court "will defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is 'plainly unreasonable.'"  E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022) (quoting In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).  "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise."  Ibid. (quoting Election L. Enf't Comm'n, 201 N.J. at 262).

The Commission is charged with resolving complaints of unethical conduct filed against school board members.  N.J.S.A. 18A:12-29.  Once a complaint is filed against a member of a local school board, the Commission "shall determine whether the conduct complained of constitutes a violation of . . . [the A]ct, or in the case of a board member, [the A]ct or the [C]ode . . . , or whether the complaint should be dismissed."  N.J.S.A. 18A:12-29(c).  The Commission is authorized to dismiss a complaint, "or specific

allegations in complaints," based on a "[l]ack of jurisdiction," N.J.A.C. 6A:28-9.2(a)(1), or when "[t]he complaint, on its face, fails to state a claim," N.J.A.C. 6A:28- 9.2(a)(7).

## A.

On appeal, Bennett generally contends the Commission erred in granting Sullivan's motions to dismiss because there were factual disputes that needed to be resolved. Bennett first argues Sullivan violated N.J.S.A. 18A:12-24(e), (f), and (g) "when she took Board emails and documents to the . . . [p]olice and . . . [p]rosecutor and asked them to take criminal action against [her]." She further argues Sullivan relied on confidential material by referencing the Fogarty letter "which was not authorized [by] the [B]oard for use, in her complaints." According to Bennett, the Commission "ignored [Sullivan]'s use of a confidential document and her self-serving deliberate use of the confidential document," to prove her case in municipal court.

Following a detailed review of Bennett's contentions and the record, the Commission determined Sullivan was not acting in her official capacity "when she engaged in the actions pled in the [c]omplaint and, even if she was, [Bennett] failed to plead sufficient credible facts to support a finding that [Sullivan] violated [the Act]." It further concluded Sullivan did not use any confidential

11

Board information, and introducing evidence from her own social media post with Bennett's commentary to prove Bennett was harassing her did not implicate the Board.

It stated, "[a]ssuming, arguendo, that [Sullivan] was acting in her official capacity, there is insufficient factual evidence that [she] made personal promises or took action beyond the scope of her duties such that, by its nature, had the potential to compromise the [B]oard." And, "[a]ny references to [Sullivan's] position on the Board, and/or to Board documents or materials, was offered solely to substantiate what she believed were criminal infractions by [Bennett]." Moreover, Sullivan's submission of the Fogarty letter she believed—albeit incorrectly—was sent to Bennett did not compromise the Board because it did not contain any confidential information, and Sullivan "reasonably believed it had been sent to [Bennett]." Ultimately, the Commission concluded "[a]ny reference to the Board was simply to show it was how [Sullivan] knew of [Bennett]," and Sullivan filed the charges in a personal capacity as a private citizen.

We have no quarrel with the Commission's determination Bennett failed to provide factual evidence Sullivan violated the Act. The Commission thoroughly reviewed the record, including Sullivan's municipal complaint

12

against Bennett and the evidence adduced at trial. The mere fact that an individual may be a school official does not mean, without more, that all actions and conduct undertaken is in their official capacity and can violate the Act.

In our view, the Commission's determination is entitled to deference because it is supported by sufficient credible evidence in the record. See Parsells, 472 N.J. Super. at 376. "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." E. Bay Drywall, 251 N.J. at 493 (quoting Election L. Enf't Comm'n, 201 N.J. at 262). We discern the Commission, with its experience and specialized knowledge, is in the best position to determine whether Sullivan violated N.J.S.A. 18A:12-24.1 by misusing her office and acting in her official capacity as a member of the Board when she appeared in municipal court. We are therefore satisfied Sullivan's reliance on Board materials was at best incidental to her position as a member of the Board and for the purpose of establishing the charges against Bennett, whom Sullivan alleged had been harassing her because of decisions she had made in her capacity as a Board member.

B.

Bennett further contends Sullivan took "deliberate action which resulted in undermining, opposing, compromising[,] or harming school personnel in the proper performance of their duties," in violation of N.J.S.A. 18A:12-24(i). Similarly, she contends the evidence shows Sullivan violated N.J.S.A. 18A:12-24(j) when she contacted the Prosecutor's Office directly to report violations of OPRA. According to Bennett, the Commission failed to acknowledge the evidence showing the administrators had not mishandled the OPRA requests as suggested by Sullivan.

Here, the Commission concluded there were "insufficient facts and circumstances presented in the [c]omplaint and the [w]ritten [s]tatement to lead a reasonable person to believe" either N.J.S.A. 18A:12-24.1(i) or (j) was violated. Moreover, the Commission noted, "when a board member or member of school personnel believes that a crime has occurred, they have the authority and obligation to take that matter to the police or other authorities, just as any member of the public would."

The Commission correctly stated the Act does not require a specific chain of command "when the concern involved potentially criminal behavior. N.J.S.A. 18A:12-24.1(j) requires board members to refer matters to the chief

14

school administrator prior to attempting to 'resolve a complaint' or 'conduct[ing] an investigation or inquiry related to a complaint.'" Because Sullivan's initial complaints of witness tampering and harassment were criminal in nature, she "was not required to report them to the chief school administrator."

The Commission's determination Sullivan had a right to pursue the allegations does not strike us as arbitrary, unreasonable, or capricious. Brady, 152 N.J. at 210. As the Commission correctly stated, N.J.S.A. 18A:12-24.1(i) and (j) do not state otherwise and do not expressly refer to criminal complaints. Moreover, it is axiomatic that nothing in the Act would bar a person from pursuing a criminal complaint against another.

To the extent we have not addressed any of Bennett's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in A-3244-22 and A-1636-23.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division